**Madelene E. BARNETT, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

No. 94 Civ. 6582 (JGK).

United States District Court, S.D. New York.

May 8, 1995.

Dwight Yellen, P.C., by Dwight Yellen, New York City, for plaintiff.

Kaare Phillips, Grais & Phillips, by Kaare Phillips, C. Barr Flinn, New York City, for defendant.

## OPINION & ORDER

KOELTL, District Judge:

This is an action arising from an alleged wrongful denial of long term disability benefits under an employee benefits plan subject to the requirements of the Employee Retirement Income Security Act of 1974

("ERISA"). The defendant has moved for an order dismissing the complaint with prejudice, alleging failure to exhaust administrative remedies, failure to file suit within applicable statutes of limitations, and failure to name the plan as a defendant. For the reasons explained below, the three claims in the complaint are dismissed with prejudice.

## I.

For the purpose of deciding this motion to dismiss, the Court accepts the allegations of the complaint as true.[1] The complaint alleges as follows. Madelene E. Barnett, worked for the defendant, International Business Machines Corporation ("IBM"), from in or about September 1984 to on or about April 25, 1991. In December 1986, Barnett was injured on the job while attempting, under protest, to lift a tool weighing between sixty and ninety pounds into the trunk of an automobile. She suffered muscular and neurological injuries to her left shoulder.

The deteriorating condition of Barnett's shoulder, resulting in the loss of the use of her left hand and sensation in it, caused Barnett to be unable to work for substantial amounts of time between April and July, 1987. She was therefore often absent from her job. Barnett was compensated for some or all of these absences under short-term disability coverage provided by IBM.

In July 1987, IBM directed Barnett to take time off in order to allow her injuries to heal. Barnett returned to work in or about May 1988 as a staff cost, data engineer.

Until this time, Barnett's medical bills related to her injury were paid by IBM's workers' compensation carrier. However, in or about April 1988, the carrier began to refuse to make payment and Barnett retained counsel to seek workers' compensation benefits. In or about January, 1989, and occasionally thereafter, IBM management and personnel department employees advised Barnett not to file claims for benefits under IBM's disability policies until the dispute regarding workers' compensation benefits was resolved.

In or about May, 1989, Barnett's manager informed her that management believed that she was lying about her injuries and that IBM "would never find her another job" at IBM. On or about June 20, 1989, out of despair and fear that she was going to be terminated, Barnett attempted suicide by slitting her wrists. On or about July 11, 1989, Barnett returned to work and was evaluated by IBM's psychologist who told her to return home and not to come back to work until further notice. Barnett complied with an order to return to work on or about November 11, 1989.

On or about August 5, 1990, Dr. George Senter determined that Barnett was disabled and unable to continue to perform the duties of her position. Dr. Senter communicated this opinion to physicians employed by IBM and recommended that, if Barnett was to continue working, her computer keyboard work be reduced from up to six hours per day to two hours per day. On or about December 10, 1990, Barnett was given an unsatisfactory review based on her job performance for the period ending on or about September 1, 1990.

In or about February 1991, Barnett was hospitalized for physical and emotional problems and was directed by her physician not to resume work upon her release. Despite recommendations by Barnett's physician to the contrary, on April 24, 1991 IBM ordered Barnett to return to work on April 25, 1991. Barnett complied with the order and was rehospitalized the same day, whereupon IBM terminated her employment.

The complaint alleges that IBM discouraged Barnett from applying for long-term disability benefits not only by urging her not to apply for them until the dispute regarding her workers' compensation benefits was resolved, but also by informing her that IBM had undertaken its own independent review of whether she would be eligible for disability benefits, which concluded that any application would be denied. For these reasons,

---

1. See *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Doe v. City of New York,* 15 F.3d 264, 266 (2d Cir.1994); *Andrea Theatres, Inc. v. Theatre Con-* *fections, Inc.,* 787 F.2d 59, 64 (2d Cir.1986) ("[A]ll allegations of the complaint must on a Rule 12(b)(6) motion be accepted as true ...") (citations omitted).

Barnett never applied for long-term disability benefits.

The foregoing facts are pleaded in the complaint and are assumed to be true solely for the purpose of deciding this motion.

## II.

The complaint, which contains three claims for relief, seeks damages, declaratory relief, and attorneys fees. The first claim alleges that the purported independent evaluation by IBM of whether Barnett was entitled to long-term disability benefits resulted in a *de facto* denial of any claims for such benefits and that this *de facto* denial gives rise to a cause of action under 29 U.S.C. § 1132 (ERISA § 502), because Barnett was entitled to such benefits.[2] Barnett alleges a *de facto* denial of benefits, because she never applied for long-term disability benefits and thus IBM never actually denied such a claim. She alleges that she did not apply for long-term disability benefits, because such an application would have been futile. Complaint ¶ 38.

Barnett's second claim for relief alleges that her termination was motivated by IBM's "desire to undermine and impermissibly foreclose Barnett's eligibility for and opportunity to make claims for disability compensation to which she would have otherwise been enti-

tled," in violation of 29 U.S.C. § 1140 (ERISA § 510).[3] Barnett alleges that IBM terminated her employment in an attempt to avoid having to pay disability benefits to her. Complaint, ¶¶ 42, 43.

Barnett's third claim for relief asserts that IBM's alleged *de facto* review and denial of her eligibility for long-term disability benefits violated 29 U.S.C. § 1133 [4] (ERISA § 503), because Barnett was not afforded an opportunity for a full and fair review of her case.

## III.

IBM argues that Barnett's first claim for relief, arising under 29 U.S.C. § 1132 (ERISA § 502), should be dismissed because she did not exhaust administrative remedies or adequately allege the futility of doing so, or, alternatively, because if there was futility, Barnett's claim is barred by the applicable statute of limitations. IBM also alleges that the § 1132 claim must be dismissed, because the benefits plan is not a defendant in this action.

■■ Barnett acknowledges that all administrative remedies provided by a plan must be exhausted before an action may be brought under 29 U.S.C. § 1132.[5] This ex-

---

**2.** Section 1132 provides, in relevant part, that:
(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary— . . .
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan
. . .
29 U.S.C. § 1132.

**3.** Section 1140 provides that:
It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given infor-

mation or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.
29 U.S.C. § 1140.

**4.** Section 1133 provides that:
In accordance with regulations of the Secretary, every employee benefit plan shall—
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
29 U.S.C. § 1133.

**5.** ERISA does not by its terms demand exhaustion. However, courts have held exhaustion of

haustion requirement is a jurisdictional prerequisite to a suit for benefits. *Ludwig v. NYNEX Serv. Co.,* 838 F.Supp. 769, 781 (S.D.N.Y.1993). IBM, in turn, concedes that a plaintiff may be excused from the exhaustion requirement if the plaintiff shows that pursuing administrative remedies would have been futile. The parties disagree as to whether Barnett has sufficiently alleged futility to excuse her from the exhaustion requirement. Barnett argues that paragraphs 37 and 38 of the complaint allege facts that, if true, are sufficient to show futility:

> Upon information and belief, in an effort to foreclose an award of appropriate disability benefits to or for the benefit of Barnett before Barnett applied for long-term disability benefits, management employees of defendant informed Barnett that defendant had undertaken on its own to review whether Barnett would be eligible for disability benefits and had determined that any application would be denied.

> Based upon defendant's statement to Barnett that any application for long-term disability benefits would be denied, Barnett did not apply for long-term disability benefits because such an application would have been futile.

Complaint, ¶¶ 37, 38.

■■■ These allegations, if true, are not sufficient to establish futility.[6] In *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588 (2d Cir.1993), the Court of Appeals for the Second Circuit explained that, the primary purposes of the exhaustion doctrine, in the context of ERISA, are to:

> (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts;

> (2) provide a sufficiently clear record of administrative action if litigation should ensue; and

> (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.

*Kennedy,* 989 F.2d at 594 (quoting *Denton v. First Nat'l Bank,* 765 F.2d 1295 (5th Cir. 1985)). The court further explained, quoting *Amato v. Bernard,* 618 F.2d 559 (9th Cir. 1980), that the exhaustion requirement is intended to "help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Kennedy,* 989 F.2d at 594 (quoting *Amato,* 618 F.2d at 567). The court found that where a claimant makes a " 'clear and positive showing' that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement." *Id.* at 594 (upholding dismissal of ERISA action for failure to exhaust administrative remedies) (citations omitted).[7] A court may also take

administrative remedies to be a prerequisite to a suit for benefits. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir. 1990); *Makar v. Health Care Corp. of the Mid-Atlantic,* 872 F.2d 80, 82–83 (4th Cir.1989); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 825–26 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir. 1989); *Alfarone v. Bernie Wolff Construction,* 788 F.2d 76, 79 (2d Cir.), *cert. denied,* 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986); *Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980).

**6.** The allegation in the complaint that IBM employees encouraged Barnett not to file a claim for long-term benefits until the issue of her entitlement to workers' compensation benefits was resolved is, if true, also insufficient to establish futility. There is no indication that this advice was intended to convey to Barnett that a claim for benefits filed after resolution of the workers' compensation claim would be denied. Moreover, such advice does not even indicate that a claim for long term disability benefits would be denied if filed before determination of the claim for workers' compensation.

**7.** A showing that pursuit of administrative remedies would be futile is generally sufficient to excuse a plaintiff from the exhaustion requirement. However, if a plaintiff failed in a timely fashion to pursue administrative remedies that were available and open, the plaintiff cannot later claim futility based on her inability to pursue those remedies any longer. *See, e.g., Tiger v. AT & T Technologies Plan for Employees' Pensions, Disability Benefits,* 633 F.Supp. 532, 534

equitable considerations into account when determining whether to dismiss a claim for failure to exhaust administrative remedies, but no such circumstances warrant excusing the exhaustion requirement in this case.[8]

 The purposes of the exhaustion doctrine would not be served by allowing the plaintiff the benefit of the futility exception. The plaintiff has not shown that she ever made any effort to take any formal administrative action with respect to any claim for long-term benefits of which she might have availed herself. She has not alleged that she was denied information about the proper procedures for presentation of a claim or that she was prevented from exhausting administrative remedies by anything other than the alleged *de facto* denial and the advice not to file a claim pending determination of her workers' compensation claims. Usually, the futility exception is applied in a context in which there has been, in some form, an unambiguous application for benefits and a formal or informal administrative decision denying benefits and it is clear that seeking further administrative review of the decision would be futile. *See, e.g., Ludwig,* 838 F.Supp. at 782 (finding futility where written inquiries were made seeking review of adverse benefits decision, employer failed to inform plaintiff of his appeal rights at any time, and employer did not respond to letter requesting review). In these circumstances, some record for review has been established and the futility exception excuses the plaintiff from clearly unproductive efforts because no further purpose would be served by requiring further exhaustion. However, if an informal or unsubstantiated denial of a "claim" that was never filed or formally presented is reviewable in the federal courts, then, in such situations, the courts and not ERISA trustees will be primarily responsible for deciding claims for benefits. In such situations, there is not a sufficiently clear record of administrative action to support effective judicial review and it is difficult, if not impossible, for a court to apply an arbitrary and capricious standard of review rather than engaging in review de novo. Additionally, allowing judicial review in such situations would encourage frivolous lawsuits by allowing plaintiffs to sue upon the mere pleading of a *de facto* denial of an unfiled claim, would discourage settlement of claims, and would likely increase the costs of claims settlement. For these reasons, the plaintiff's § 1132 claim must be dismissed for failure to exhaust administrative remedies.

In *Cappiello v. NYNEX Pension Plan,* No. 92 Civ. 3896, 1994 WL 30429 (S.D.N.Y. Feb. 2, 1994), Judge Mukasey applied the exhaustion doctrine to facts similar to those of the present case. There, the plaintiff did not offer evidence of any prior written request for the pension benefits she sought, but alleged that her union representative informally pursued her claims and that she was told verbally that there had been an unsuccessful review of her case. Judge Mukasey held that to allow the plaintiff to maintain an action under ERISA in such circumstances would undercut the purposes of the exhaustion requirement. *See Cappiello,* 1994 WL 30429, at *3. He concluded that, "Plaintiff simply chose to ignore the procedural review provided under the Plan and, having failed to secure relief by following a procedure she devised, now asks a court to hear her claim." *Id.* at *4. Moreover, Judge Mukasey noted that in order to exhaust the remedies provided by the plan at issue, it was necessary to file a written request to appeal as well as an initial application for benefits. *Id.* Here, as in *Cappiello,* the alleged informal determination of Barnett's claims was not in any way

---

(E.D.N.Y.1986) (McLaughlin, J.) ("[A]bsent equitable considerations, the failure to comply with reasonable time constraints prescribed by the Plan's review procedure precludes judicial review of a claim for benefits.") (citations omitted).

**8.** *See Springer v. Wal–Mart Assocs. Group Health Plan,* 908 F.2d 897 (11th Cir.1990) (holding that the decision whether to apply the exhaustion requirement in an ERISA case is committed to the district court's sound discretion, but that the district court abused its discretion by not dismissing the suit for failure to exhaust administrative remedies); *Ludwig v. NYNEX Serv. Co.,* 838 F.Supp. 769 (S.D.N.Y.1993) ("The 'futility doctrine' is perhaps best understood as a term of art that considers whether, in light of both the claimant's and the plan administrator's actions, it is fair to require the dismissal of the claimant's suit pending her reapplication for benefits in accordance with the procedures set forth in the summary plan description.").

sufficient to satisfy the exhaustion requirement.

Barnett argues that she did not "simply ignore" the procedure available to her as did Cappiello, but that she knew that this procedure would be futile. However, Cappiello also alleged futility, claiming that a *de facto* denial of her informal appeal established the futility of filing an appeal in accordance with formal administrative procedures. *Id.* Judge Mukasey responded that Cappiello's position amounted to "a request that this court disregard the administrative procedures entirely, a position contrary to both the Plan and case law." *Id.* at \*4.

A *de facto* denial is simply not sufficient to satisfy the futility exception to the exhaustion requirement. In *Schein v. News America Publishing, Inc.*, No. 89 Civ. 0052, 1989 WL 56255 (S.D.N.Y. May 23, 1989) (Mukasey, J.), the court held that in a situation in which a minority of the members of a benefits committee express firm beliefs to the plaintiff that the plaintiff's claims are without merit and that the view of the committee is fixed, there is still no futility and the exhaustion requirement bars the plaintiff's claims, because a majority of the committee has not considered them. *Schein*, 1989 WL 56255, at \*3–4.[9] The threshold required by the futility exception is very high and informal representations of the views of a committee are not a sufficient basis for claiming futility. In the present case, the representations that IBM had conducted an independent review were made only by IBM managers and personnel department employees. There was no effort by the plaintiff to present her claims to the full committee and certainly no effort to pursue any appeal.

**IV.**

IBM argues, in the alternative, that even if Barnett had made an adequate showing of futility, her § 1132 claim is nonetheless barred by the applicable statute of limitations. ERISA does not itself prescribe a limitations period for actions to obtain benefits. The statute of limitations applicable to a claim arising under ERISA is the statute of limitations of the most analogous state law claim. *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *see generally, Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.").

Citing *Miles*, IBM argues that claims under § 1132 are most often analogized to actions for breach of contract. *See also Patterson–Priori v. Unum Life Ins. Co. of America*, 846 F.Supp. 1102, 1104 (E.D.N.Y.1994). Barnett replies that in *Miles* the court stated only that the six year statute of limitations provided by CPLR 213 is the applicable statute of limitations for a claim for benefits under § 1132 when New York is the state whose law is controlling, but not that CPLR 213(2), applicable to contract actions, is the specific provision of CPLR 213 that applies.[10] Barnett argues it is more reasonable to conclude that CPLR 213(1) is the provision of CPLR 213 on which the court in *Miles* relied. CPLR 213(1) provides that an action must be commenced in six years if it is "an action for which no

---

**9.** Barnett's attempt to distinguish *Schein* is unavailing. She argues that the key distinction is that she is receiving no benefits from the plan whereas Schein was indisputably entitled to receive some benefits, but the amount was contested. The fact that a claimant is concededly entitled to receive some benefits is irrelevant in determining whether futility exists, especially when, as in *Schein* and the present case, the plaintiff has not made any attempt to apply for benefits.

**10.** CPLR 213 provides, in relevant part, that:
The following actions must be commenced within six years:
 1. an action for which no limitation is specifically prescribed by law;
 2. an action upon a contractual obligation or liability, express or implied, except as provided in section two hundred thirteen-a of this article or article 2 of the uniform commercial code or article 36–B of the general business law. . . .
N.Y.Civ.Prac.L. & R. 213 (McKinney).

limitation is specifically prescribed by law...." N.Y. CPLR 213(1). The issue of whether *Miles* relied on CPLR 213(1) or CPLR 213(2) is significant, because IBM argues that under the New York borrowing statute, CPLR 202, the Court should apply the shorter relevant statute of limitations as between the statute of limitations in New York and in North Carolina, where the plaintiff resides. Under North Carolina law, the statute of limitations for breach of contract is not equivalent to the statute of limitations for actions for which no limitation is specifically prescribed by law.

The Court of Appeals in *Miles* was apparently referring to the six year statute of limitations for breach of contract contained in CPLR 213(2). If the Court of Appeals had intended to rely upon the statute of limitations for actions for which no limitation is specifically proscribed by law, a more analogous state law provision would have been CPLR 214(2) which provides a limitations period for actions to recover upon a liability created by statute when no statute is otherwise applicable and it is thus more applicable to § 1132 claims than CPLR 213(1).

In *Patterson–Priori*, the court also read *Miles* as holding that "New York's six-year statute of limitations for contract actions, N.Y.Civ.Prac.L. & R. § 213 (McKinney 1990), is most analogous to Section 1132 actions and hence should control." *Patterson–Priori*, 846 F.Supp. at 1104 (citations omitted).[11]

Every other court of appeals to have considered the question has also concluded that a breach of contract statute of limitations is the appropriate statute of limitations to be applied to § 1132 claims. *See, e.g., Meade v. Pension Appeals and Review Committee*, 966

F.2d 190, 195 (6th Cir.1992) ("Other courts have uniformly characterized section 1132(a)(1)(B) claims as breach of contract claims for purposes of determining the most analogous statute of limitations under state law."); *Johnson v. State Mutual Life Assurance Co.*, 942 F.2d 1260, 1263 (8th Cir.1991) ("[W]e agree with those federal courts that have held, without exception to our knowledge, that a suit for ERISA benefits under § 1132(a)(1)(B) should be characterized as a contract action for statute of limitations purposes, unless a breach of the ERISA trustee's fiduciary duties is alleged.") (citations omitted); *Dameron v. Sinai Hospital of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir.1987) (same); *Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 252–53 (7th Cir.1983) (same).

For all of the foregoing reasons, the statute of limitations to be applied to § 1132 claims is the statute of limitations for contract actions under state law.

IBM correctly argues that because the plaintiff's cause of action accrued in North Carolina, where she was employed, the Court should consider North Carolina's statute of limitations for contract actions under New York's "borrowing statute," CPLR 202,[12] to determine whether New York or North Carolina law applies. *See Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir.1977); *Gorlin v. Bond Richman & Co.*, 706 F.Supp. 236, 239 (S.D.N.Y.1989). CPLR 202 requires the Court to apply the shorter of the two applicable statutes of limitation, because Barnett is not a New York resident. The North Carolina period of limitations for contract actions is three years, which is shorter than New York's six year period. *See* N.C.Gen. Stat. § 1–52(1).[13]

---

**11.** The court in *Patterson–Priori* found Washington law and a specific contract provision governing the time within which to bring actions to be controlling.

**12.** N.Y.CPLR 202 provides that:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor

of a resident of the state the time limited by the laws of the state shall apply.

N.Y.Civ.Prac.L. & R. 202 (McKinney).

**13.** Section 1–52(1) provides a three year limitations period for actions:

Upon a contract, obligation or liability arising out of a contract, express or implied, except those mentioned in the preceding sections or in G.S. 1–53(1).

N.C.Gen.Stat § 1–52(1). Barnett argues that New York's statute of limitations should apply, because "New York law should control, particu-

The accrual of a claim under ERISA is determined by federal law. *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1138 (7th Cir.1992); *Smith v. Rochester Tel. Bus. Marketing Corp.,* 786 F.Supp. 293, 306 (W.D.N.Y.1992), *aff'd,* 40 F.3d 1236 (2d Cir. 1994); *see also Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983) (holding for § 1983 actions that although state law determines the limitations period, federal law determines when the claim arises). A claim for benefits under ERISA accrues when an application for benefits is denied. *Held,* 912 F.2d at 1205–06; *Miles,* 698 F.2d at 598; *Patterson–Priori,* 846 F.Supp. at 1106. In this case, the claim under § 1132 accrued at the time at which it became futile to apply for benefits, because the plaintiff alleges that at that time there was a *de facto* denial of her claim.

A summons with notice for this action was filed on April 22, 1994 in the New York State Supreme Court, from which the action has been removed and thus the § 1132 claim is time barred if it accrued prior to April 22, 1991. Barnett was terminated on April 25, 1991. Paragraph 38 of the complaint alleges that "Barnett did not apply for long-term disability benefits because such an application would have been futile," but does not specify when the alleged futility, resulting from the *de facto* denial, commenced. If the *de facto* denial occurred prior to April 22, 1991, then Barnett's § 1132 claim is deficient not only because it fails to show cause for departing from the exhaustion requirement, but also because it is time-barred.

Barnett's § 1132 claim would not be time barred only if the *de facto* denial occurred after April 22, 1991. This conclusion further reinforces the finding that Barnett has not pleaded facts sufficient to justify an exception to the exhaustion requirement on the ground of futility. Futility must be established by a clear and positive showing. *Kennedy,* 989 F.2d at 594. In this case, any showing of futility must establish that the futility occurred after April 22, 1991, because

any earlier *de facto* denial that is alleged to constitute futility would trigger the accrual of the limitations period and bar this suit under the applicable three year statute of limitations. The complaint makes no showing that the *de facto* denial occurred subsequent to April 22, 1991, let alone a clear and positive one. Indeed plaintiff attempts to rely on actions that occurred in 1989 to support her allegation of futility such as the allegation that beginning in January, 1989, IBM advised Barnett not to file for disability benefits pending determination of her workers' compensation dispute. A claim based on such allegations would plainly be time barred.

### V.

IBM correctly argues that yet another reason that the plaintiff's § 1132 claim must be dismissed is that ERISA only authorizes suits for benefits against the plan itself, not against the plaintiff's employer or the plan sponsor. *See Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989); *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 (9th Cir.1985). In *Leonelli,* the Court of Appeals for the Second Circuit upheld, on several grounds, the district court's refusal to allow the plaintiff to amend his complaint to plead ERISA claims. The Court held that ERISA did not provide for an action against the two individual defendants under § 1132, because:

> [T]he proposed amended cause of action under ERISA's civil enforcement provision, § 1132(a)(1)(B), for failure to pay benefits due under the Pension Plan would be barred by plaintiff's failure to name the Pension Administrative Committee as a defendant. In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable. *See* § 1132(d)(2); *see also Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 (9th Cir.1985) (per curiam).

larly in light of the scattershot contacts that other jurisdictions have regarding the claim," and because "New York has the greatest interest in and contacts to the litigation." *Plaintiff's Memo in Opp.* at 9–10. Barnett's argument is without

basis—IBM correctly argues that New York law does apply and that under the New York borrowing statute, the North Carolina statute of limitations should be applied.

*Leonelli,* 887 F.2d at 1199; *see also* 29 U.S.C. §§ 1132(d)(1), (2).[14] In the present case, neither the plan nor an administrator, trustee, or other fiduciary [15] is named as a defendant. The § 1132 claim against IBM must be dismissed, because IBM is not a proper defendant to such a claim and it is therefore not a claim upon which relief can be granted.

## VI.

IBM argues that the plaintiff's second claim, arising under 29 U.S.C. § 1140 (ERISA § 510), should be dismissed because it was not brought within the applicable limitations period. IBM acknowledges that there is no exhaustion requirement for claims brought under 29 U.S.C. § 1140. *See Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197, 1205 (10th Cir.1990); *Zipf v. American Tel. & Tel. Co.,* 799 F.2d 889, 891–94 (3d Cir.1986); *Amaro v. Continental Can Co.,* 724 F.2d 747 (9th Cir.1984); *Molina v. Mallah Org., Inc.,* 804 F.Supp. 504, 511–512 (S.D.N.Y.1992); *Lawford v. New York Life Ins. Co.,* 739 F.Supp. 906, 911–13 (S.D.N.Y. 1990).

A claim accrues under § 1140 when the employer decides to discharge an employee and communicates that decision to him. *Tolle,* 977 F.2d at 1138. Barnett was terminated on or about April 25, 1991 according to the complaint, and she has conceded that her claim accrued no later than this date. *Memo in Opp.* at 5.

IBM correctly argues that the state law claim most analogous to a wrongful discharge claim under § 1140 is a claim for wrongful discharge or employment discrimination. *See Byrd v. MacPapers, Inc.,* 961 F.2d 157, 159 (11th Cir.1992); *McClure v. Zoecon, Inc.,* 936 F.2d 777, 778 (5th Cir.1991) ("[N]early all [courts] have construed § 510 claims as wrongful discharge or employment discrimination claims.") (citations omitted); *Held,* 912 F.2d at 1205 (holding that the most analogous claim for relief under New York Law is a claim for employment discrimination). In particular, a claim for discharge in retaliation for seeking workers' compensation benefits or to prevent the seeking of workers' compensation benefits is the claim most analogous to a § 1140 claim, the only difference in the nature of the claims being in the type of benefits involved. *See Byrd,* 961 F.2d at 159 ("Florida Statute § 440.205 is most closely analogous to § 510 of ERISA in that it prohibits the discharge of an employee in retaliation for the employee's claim or attempted claim for compensation under Florida's workers' compensation law.").

New York Workers' Compensation Law § 120 provides a two year period in which to bring claims for retaliatory discharge or discrimination resulting from an attempt to claim workers' compensation benefits.[16] North Carolina General Statutes

14. § 1132(d) provides that:
(d) Status of employee benefit plan as entity
(1) An employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, subpoena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan. In a case where a plan has not designated in the summary plan description of the plan an individual as agent for the service of legal process, service upon the Secretary shall constitute such service. The Secretary, not later than 15 days after receipt of service under the preceding sentence, shall notify the administrator or any trustee of the plan of receipt of such service.
(2) Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability

against such person is established in his individual capacity under this subchapter.
29 U.S.C. § 1132(d).

15. As indicated in *Leonelli,* a suit against trustees or administrators of a plan in their official capacity is equivalent to a suit against a plan. *See Leonelli,* 887 F.2d at 1199. Additionally, ERISA authorizes suits against fiduciaries, in their individual capacities, for breaches of fiduciary duty. *See* 29 U.S.C. § 1109. 29 U.S.C. § 1132(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2).

16. New York Workers' Compensation Law § 120 provides, in relevant part, that:

It shall be unlawful for any employer or his or her duly authorized agent to discharge or in any other manner discriminate against an employee as to his or her employment because

§ 97–6.1 provided a one year limitations period for such claims. Section 97–6.1 was repealed effective October 1, 1992 by 1991 (Regular Session 1992) N.C.Sess.Laws c. 1021, § 4. Nonetheless, if otherwise applicable, it bars the plaintiff's § 1140 claim because that claim was barred under the statute before the statute was repealed. *See Gillespie v. American Motors Corp.*, 51 N.C.App. 535, 538, 277 S.E.2d 100, 101 (N.C.Ct.App.1981) ("[O]nce a claim is barred by the running of the applicable statute of limitations, it cannot be revived by a subsequent action of the legislature.") (citations omitted). Barnett's claim under § 1140 accrued no later than April 25, 1991 and was therefore barred by § 97–6.1 on April 25, 1992, prior to October 1, 1992 when the repeal of the statute was effective.

▪ Under CPLR 202, the New York borrowing statute, N.C.Gen.Stat. § 97–6.1 provides the applicable statute of limitations, rather than New York Workers' Compensation Law § 120, because it provides a shorter limitations period and Barnett is not a resident of New York. Barnett did not commence this action prior to April 25, 1992, and therefore her § 1140 claim is time barred by § 97–6.1.

Barnett argues that the Court should not apply a statute of limitations for wrongful discharge or discrimination in retaliation for seeking workers' compensation benefits to her § 1140 claim, but rather a statute of limitations for general discrimination claims. She relies on *Held v. Manufacturer's Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir. 1990), which found that the most analogous claim under New York law to a § 1140 claim is a claim for employment discrimination, for which CPLR 214(2) provides a three year limitations period. However, in *Held* the court did not explicitly consider whether a claim alleging discriminatory retaliation for seeking workers' compensation benefits was more analogous to a § 1140 claim than a general discrimination claim. Indeed, there

was no statute of limitations specifically provided in § 120 of the N.Y. Workers' Compensation Law until October 26, 1987, three years after the plaintiff in *Held* was discharged. *See* 1987 N.Y.Laws c. 436, § 1 (creating two year limitation period). A claim alleging retaliation based on a plaintiff's attempt to secure workers' compensation benefits is more analogous to a § 1140 claim, which also alleges retaliation based on a plaintiff's efforts to secure benefits. *See Byrd*, 961 F.2d at 159.

## VII.

▪ IBM argues that the plaintiff's third claim for relief, arising under 29 U.S.C. § 1133 (ERISA § 503), should be dismissed because § 1133 does not provide a basis for relief independent of that provided by § 1132. IBM asserts that any claim under § 1133 is necessarily subsumed by the plaintiff's claim under § 1132. In *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430 (S.D.N.Y.1983), relied on by IBM, the court found that it had jurisdiction under 29 U.S.C. § 1132(f) over a cause of action that contained a claim alleging a violation of § 1133. *See Chambless*, 571 F.Supp. at 1436 & n. 8, 1457–58. The court did not regard the § 1133 claim as subsumed in a § 1132 claim, but considered § 1132 as providing the jurisdictional basis to the claim under § 1133 that the hearing denying benefits was not fair. In *Guthrie v. Hewlett–Packard Co. Employee Benefits Org.*, 773 F.Supp. 1414 (D.Colo.1991), relied on by Barnett in opposition to IBM's argument, the court took a similar approach. It found that the plaintiff's action challenging a denial of long-term disability benefits was brought under 29 U.S.C. § 1132(a)(1)(B), which by its terms authorizes persons to bring suit, and that one of three grounds of alleged arbitrariness was a charge that the defendant had failed to comply with 29 U.S.C. § 1133

such employee has claimed or attempted to claim compensation from such employer, or because he or she has testified or is about to testify in a proceeding under this chapter and no other valid reason is shown to exist for such action by the employer.

Any complaint alleging such an unlawful discriminatory practice must be filed within two years of the commission of such practice.... N.Y. Workers' Compensation Law § 120 (McKinney).

and 29 C.F.R. § 2560.503–1(f).[17] *See Guthrie,* 773 F.Supp. at 1415–16, 1418–19.

The parties dispute over the characterization of the § 1133 claim is merely a matter of semantics.

The plaintiff's claim under § 1133 must be dismissed not because it is subsumed by her § 1132 claim, but because it is a claim authorized by § 1132 and is therefore subject to the requirement of exhaustion of administrative remedies and the requirement that the plan be named as a defendant in a suit to recover benefits allegedly due.

■ Moreover, Barnett's § 1133 claim would otherwise be subject to dismissal, because it is undisputed that there was no formal, administrative denial of any claim for benefits. In *Cappiello,* the court held that Cappiello's claim arising under § 1133 was without merit, because, having never actually filed the claim for review at issue, she could not assert that she had improperly been denied notice of the reasons for denial of such a claim or that she had not been provided a full and fair review of the claim. *Cappiello,* 1994 WL 30429, at *4. The court therefore granted summary judgment in favor of the defendants. The same is true in this case. Barnett cannot complain about the absence of a full and fair hearing when she never asked for one.

### VIII.

For the foregoing reasons, the complaint is dismissed with prejudice. The plaintiff's claims under 29 U.S.C. §§ 1132, 1133 are dismissed for failure to exhaust administrative remedies and for failure to state a claim upon which relief may be granted. The plaintiff's claim under 29 U.S.C. 1140 is dis-

missed for failure to commence this action within the applicable statute of limitations.

**SO ORDERED.**

---

**17.** 29 CFR § 2560.503–1(f), "Content of Notice," provides that:

> A plan administrator ... shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
> (1) The specific reason or reasons for the denial;
> (2) Specific reference to pertinent plan provisions on which the denial is based;
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
> (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 CFR § 2560.503–1(f).