Melvin C. LEWIS, Plaintiff,

v.

JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY, Marc J. Willien-
feld, M.D., Francis Gillis, Defendants.

No. CIV.A. 97CIV02051 (MP).

United States District Court,
S.D. New York.

May 29, 1998.

Leonard Buddington, Jr., Law Office of
Leonard Buddington Jr., Bronx, NY, for
Melvin C. Lewis.

Joan B. Gross, Dorsey & Whitney LLP,
New York, NY, for John Hancock Mut. Life
Ins. Co.

### Opinion and Order

MILTON POLLACK, Senior District
Judge.

Plaintiff Melvin C. Lewis brought breach
of contract and fraud claims against his for-
mer employer, John Hancock Mutual Life
Insurance ("John Hancock"), after John Han-
cock terminated both long term disability
benefits and a premium waiver provision in
two individual life insurance policies pur-
chased from John Hancock. John Hancock
moved for partial summary judgment with
respect to plaintiff's claims for long term
disability benefits. For the reasons dis-
cussed below, John Hancock's motion for
partial summary judgment is granted.

### Background

Plaintiff Melvin C. Lewis commenced his
employment as a marketing representative at
defendant John Hancock ("John Hancock")

on or about November, 1979. Plaintiff's position at the company was covered by a collective bargaining agreement between John Hancock and the United Food and Commercial Workers International Union, AFL–CIO and CLC. Part of the collective bargaining agreement includes a "Security Program," which provides, *inter alia,* long term disability benefits for employees upon proof of total disability due to accidental bodily injury or disease. As a qualified employee benefit plan, the Security Program is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA").

John Hancock's long term disability coverage includes two definitions of "total disability." During the first sixty months of continuous disability, the phrase "totally disabled" is defined as "wholly and continuously disabled by accidental bodily injury or sickness to the extent that the employee is thereby prevented from performing any and every regular duty of his occupation or employment." After sixty consecutive months of disability, the phrase "totally disabled" is narrowed to include "only such complete incapacity, resulting for accidental bodily injury or sickness, as prevents the employee from performing any and every duty of any occupation or employment for which is reasonably qualified by education, training or experience."

In response to plaintiff's claims that he was unable to continue working at John Hancock due to the onset of a skin condition, severe atopic dermatitis, John Hancock deemed plaintiff totally disabled as of February 14, 1985. From that date until August 21, 1985, plaintiff received Accident and Sickness benefits under the terms of the Security Program. Upon the expiration of these benefits on August 21, 1985, plaintiff sought long term disability coverage. On or about September 1985, John Hancock authorized payment of long term disability benefits to plaintiff, retroactive to August 22, 1985. Plaintiff received monthly payments under the Security Program's long term disability coverage until February 13, 1990.

On December 21, 1989, John Hancock notified plaintiff by letter about the impending change in the definition of "total disability" under John Hancock's long term disability coverage. Plaintiff was further informed that he would be entitled to continued long term disability benefits only if he was unable to perform any occupation for which he was reasonably qualified by education, training or experience. John Hancock also indicated that it would undertake an investigation to ascertain plaintiff's continued eligibility for such benefits.

After reviewing plaintiff's medical records and having plaintiff examined by an independent physician, John Hancock determined that plaintiff was not "totally disabled" as defined by the Security Program. By letters of October 17 and October 28, 1990, John Hancock notified plaintiff that as of February 13, 1990, he would no longer be eligible for long term disability benefits. In these letters, John Hancock explained that plaintiff or his authorized representative could request a review through union grievance procedures.

On November 21, 1990, plaintiff's' former attorney, H.J. Edwards, sent a letter to John Hancock requesting that the company review its decision to terminate plaintiff's long term disability benefits. On January 21, 1991, John Hancock responded by reiterating that any appeal of its October 17, 1990 determination had to be pursued through established union grievance procedures. It is uncontroverted that neither plaintiff nor any authorized representative pursued such an appeal within the proscribed time period (60 days) or at any time thereafter.

On March 24, 1997, plaintiff commenced this action, asserting breach of contract and fraud claims under state law against John Hancock; Marc Willienfeld a physician; and, Defendant Francis L. Gillis, a senior claim consultant working at John Hancock. The individual defendants were not served and the action has been discontinued as to them. Plaintiff asserts claims for "lost" disability benefits totaling $108,000 and a separate claim for $2,550 in damages resulting from John Hancock's termination of the premium waiver provision in two life insurance policies purchased from John Hancock. On March 27, 1998, John Hancock moved for partial

summary judgment with respect to Lewis' claim for long term disability benefits.

### Discussion

#### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion..." and identifying the matter "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden, the burden shifts to the non-movant who must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice "to overcome a motion for summary judgment." *Knight*, 804 F.2d at 12. In demonstrating that the factual issue in dispute is "genuine," the nonmoving party must offer evidence to allow a reasonable jury to return a verdict in its favor. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### B. Analysis

Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The statute defines an "employee welfare benefit plan" as follows:

any plan, fund, or program...established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise,...medical, surgical, or hospital care or benefits, or benefits in the case of sickness, accident, disability, death or unemployment...

29 U.S.C. § 1002(1).

It is undisputed that the Security Program is an "employee welfare benefit plan" covered by ERISA.

The statute "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for...welfare plans." *Shaw*, 463 U.S. at 91, 103 S.Ct. 2890. Part of this "closely integrated regulatory system," *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), includes a preemption clause which is "deliberately expansive." *Pilot Life, Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The specific provision, Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or hereafter relate to an employee benefit plan covered by ERISA." Section 514(c)(1), 29 U.S.C. § 1144(c)(1), defines "state law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." The exceptions to the preemption clause include any state law that "regulates insurance, banking, or securities," and generally applicable state criminal laws. *See* 29 U.S.C. §§ 1144(b)(2)(A) and (b)(2)(B)(4).

The Supreme Court has repeatedly interpreted the term "relate to" expansively. *See Ingersoll–Rand Co.*, 498 U.S. at 138–39, 111 S.Ct. 478 (1990); *Pilot Life Insurance Co.*, 481 U.S. at 47–48, 107 S.Ct. 1549 (1987); *Shaw*, 463 U.S. at 96–100, 103 S.Ct. 2890 (1983). Under this approach, "a state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *Ingersoll–Rand Co.*, 498 U.S. at 139, 111 S.Ct. 478; *see also*

*Snyder v. Elliot W. Dann Co.*, 854 F.Supp. 264, 273 (S.D.N.Y.1994) ("As a matter of law all state common law claims of promissory estoppel, breach of contract and fraud are preempted by ERISA.").

■ In the instant case, plaintiff's two causes of action allege breach of contract and fraud respectively, both of which are grounded in state common law. No reference is made to Section 502(a) of ERISA, 29 U.S.C. § 1132(a), a "comprehensive civil enforcement scheme" which is "one of the essential tools for accomplishing the stated purposes of ERISA." *Pilot Life Ins. Co.*, 481 U.S. at 52, 54, 107 S.Ct. 1549.[1] Therefore, as a matter of law, plaintiff's breach of contract and fraud claims with respect to lost disability benefits are preempted by ERISA.

■ Even assuming that plaintiff had properly asserted a claim under ERISA's civil enforcement provision, this claim would be time barred under the applicable statute of limitations. ERISA does not prescribe a limitations period for commencement of § 1132 actions for the recovery of employee benefits. *Barnett v. International Business Machines Corp.*, 885 F.Supp. 581, 589 (S.D.N.Y.1995). However, where a plan participant files an action under § 1132 seeking benefits purportedly due him under the terms of an ERISA plan, courts will apply the limitations period specified in the most nearly analogous state limitations statute. *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). The Second Circuit has held that in New York, the six-year statute of limitations prescribed by N.Y. CPLR § 312 for breach of contract actions governs ERISA claims for denial of employee benefits.[2] *See Larsen v. NMU Pension*

*Trust*, 902 F.2d 1069, 1073 (2d Cir.1990); *Miles*, 698 F.2d at 598.

■ Federal law, not state law, covers the accrual date for an ERISA cause of action. *See Barnett*, 885 F.Supp. at 591. Applying federal law, the Second Circuit has long recognized that an ERISA cause of action under § 1132 accrues once a beneficiary's claim for benefits is denied. *See Miles*, 698 F.2d at 598 ("A plaintiff's ERISA cause of action accrues and the six-year period begins to run when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries.").

■ Plaintiff filed this action on March 24, 1997. Hence, plaintiff's claims for long term disability benefits are time-barred under ERISA if they accrued prior to March 24, 1991. Plaintiff's right of action first commenced on October 17, 1990, when plaintiff was unequivocally notified that he was no longer entitled to disability benefits and that plaintiff could appeal this determination through plaintiff's respective union grievance procedures. Plaintiff was thereafter apprised of the established review procedures on at least two other occasions, by letters dated October 30, 1990 and January 21, 1991. Plaintiff did not avail himself of these procedures within the 60 day period proscribed by the collective bargaining agreement or at any time thereafter. Indeed, plaintiff's first formal action to recover long term disability benefits did not commence until the filing of the instant law suit. Plaintiff's claims for long term disability benefits are therefore time barred.

■ Finally, in addition to the foregoing, there is one other independent basis for granting John Hancock's motion for partial summary judgment. The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative

---

1. Section 1132(a)(1)(B) provides that a participant or beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

2. *Barnett* points out that when a plaintiff's cause of action accrued in another state, the court should look to New York's borrowing statute,

N.Y. CPLR 202, to determine whether New York law or the law of the foreign state applies. 885 F.Supp. at 590. NY CPLR 202 requires the court to apply the shorter of the two applicable statute of limitations. This is not an issue in this case because plaintiff is a New York resident, and, pursuant to N.Y. CPLR 202, the New York statute of limitations applies in these circumstances.

remedies in ERISA cases." *Alfarone v. Bernie Wolff,* 788 F.2d 76, 79 (2d Cir.1986), *cert. denied,* 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986); *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588 (1993). ERISA requires that all benefit plans provide for carrier review. 29 U.S.C. § 1133.[3] The primary purpose underlying the exhaustion requirement in the ERISA context is to "help reduce the number of frivolous law suits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Kennedy,* 989 F.2d at 594 (citing *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980)).

Plaintiff neither followed proper review procedure nor proffered a reasonable explanation why such review procedures were not followed. For this reason, plaintiff's claim must fail for failure to exhaust administrative remedies.

## Conclusion

Partial summary judgment is granted in favor of John Hancock. The court determines that plaintiff's claim for long term disability benefits, asserted under state law, is preempted by ERISA. In addition, even if plaintiff had properly asserted claims under ERISA's civil enforcement provision, 29 U.S.C. § 1132, these claims would be barred by the applicable statute of limitations and the exhaustion requirement.

SO ORDERED

---

**3.** 29 U.S.C. § 1133 provides:

In accordance with regulations of the Secretary, every employee benefit plan shall——(1) provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.