**F. John BELNOMI**

v.

**SONOCO PRODUCTS COMPANY.**

Civ. A. No. 88–3241.

United States District Court,
E.D. Pennsylvania.

May 25, 1988.

Dennis D. Brogan, West Chester, Pa., for plaintiff.

Ronald H. Surkin, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

FULLAM, Chief Judge.

Plaintiff commenced this lawsuit by filing a complaint in state court on April 4, 1988 asserting a claim for disability retirement benefits pursuant to the "Retirement Plan for Members of the Bargaining Unit of the Sonoco Products Company Packaging Division, Downingtown, Pennsylvania" ("Pension Plan"). Defendant removed the action to this court on April 18, 1988. Defendant now moves for dismissal of the complaint or, alternatively, for summary judgment.

Plaintiff began working for Sonoco in 1955. On May 1, 1957, plaintiff became a participant in a pension plan established by Sonoco. On July 15, 1974, plaintiff became totally and permanently disabled. Plaintiff was discharged from Sonoco's employment on June 30, 1976, after 19 years and 2 months service to the company.

According to plaintiff, the Pension Plan entitles a participant who becomes permanently and totally disabled and who has accumulated 15 years of service to the company to receive disability benefits once he attains the age of 50. Plaintiff, who accumulated more than 15 years of service before becoming disabled in 1974, turned 50 on April 3, 1982. Plaintiff therefore as-

serts that as of April 3, 1982, he became entitled to disability benefits under the Pension Plan, which the company has refused to pay him.

In November 1979 and again in September 1981, plaintiff's counsel wrote to Sonoco and presented plaintiff's interpretation of the relevant sections of the Pension Plan. In his September 1981 letter, counsel wrote that since plaintiff would be 50 years old on April 3, 1982, plaintiff "expected" that he would be entitled to receive disability benefits at that time. Plaintiff's counsel asked that Sonoco respond with "written confirmation" of plaintiff's future entitlement. In a letter dated October 14, 1981, Sonoco informed plaintiff that the Retirement Committee had rejected plaintiff's interpretation of the Pension Plan and that plaintiff would not be entitled to receive disability benefits after April 3, 1982. In the Committee's view, although plaintiff had satisfied the 15–year service requirement, plaintiff would not qualify for disability benefits since he had not attained the age of 50 before becoming disabled.

Defendant argues that plaintiff's suit is barred by the applicable statute of limitations. This defense requires that the court determine when plaintiff's cause of action for unpaid, but allegedly currently-owed, pension benefits accrued. The parties have suggested different dates.

Defendant contends that at the very latest, plaintiff's claim for disability benefits accrued in October 1981 when Sonoco informed plaintiff that the Retirement Committee had repudiated plaintiff's gloss of the Pension Plan and decided that plaintiff was not entitled to receive disability benefits after April 3, 1982. On the other hand, plaintiff apparently believes that a new cause of action accrues as each monthly pension payment becomes due. Since

plaintiff alleges that he should have been paid disability benefits under the Plan beginning April 3, 1982, plaintiff contends that this suit, filed April 4, 1988, is timely since a six-year statute of limitations applies and since April 3, 1988 fell on a Sunday.[1]

Both sides are mistaken. As defendant has pointed out, an action under 29 U.S.C. § 1132(a)(1)(B) for unpaid pension benefits arises when the fiduciary of the pension plan denies a plaintiff's application for benefits. *Paris v. Profit Sharing Plan, Etc.,* 637 F.2d 357, 361 (5th Cir.1981); *Miles v. New York State Teamsters Conference,* 698 F.2d 593 (2d Cir.1983). Thus, plaintiff's contention that a claim under § 1132(a) arises as each pension payment becomes due clearly is off the mark.

Yet, although defendant has accurately stated the accrual principle in actions to recover pension benefits under 29 U.S.C. § 1132(a)(1)(B), defendant misconstrues the nature of plaintiff's inquiries to the Retirement Committee in 1979 and 1981. The Retirement Committee did not deny plaintiff's application for benefits in either 1979 or 1981 for the simple reason that plaintiff had not yet applied to the committee for benefits.

Since plaintiff was not yet entitled to disability benefits under any possible interpretation of the Plan, plaintiff's letters in 1979 and 1981 should be regarded as nothing more than requests that the company offer its interpretation of the Plan. The idea that plaintiff could apply for benefits in either 1979, 1981 or indeed anytime before April 3, 1982 is nonsensical since even if plaintiff were correct that the Plan entitled him to benefits at age 50, it would not have been clear whether he would ever

1. Both parties believe that since 29 U.S.C. § 1132(a) fails to specify a limitations period, the court should borrow the most appropriate state law limitations period. *See, e.g., Ferguson v. Greyhound Retirement and Disability Trust,* 613 F.Supp. 323 (W.D.Pa.1985) (applying Pennsylvania's statute of limitations pertaining to contracts to a civil action to recover benefits). The parties disagree, however, whether a six-year or a four-year state law limitation period applies. However, even assuming that the parties are correct and that this court should try to determine which state law statute of limitations is most analogous, *but see, e.g., In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.1988), I need not decide which limitations period is applicable since I have concluded that the plaintiff's action for current benefits is entirely premature. *See infra.*

ultimately qualify for those benefits until he actually turned 50.

According to defendant, plaintiff's inquiries by letter in November 1979 and September 1981 constituted applications for benefits, and when the company communicated the Retirement Committee's response, plaintiff's cause of action for pension benefits accrued. But even though ERISA allows a plan participant to sue to "clarify his rights to future benefits under the terms of the plan ..." 29 U.S.C. § 1132(a)(1)(B), a suit to clarify future benefits is different than and distinct from a suit to recover currently-owed pension benefits. *See Janowski v. International Brotherhood of Teamsters,* 673 F.2d 931, 935 (7th Cir.1982). Indeed, one court has decided that the exhaustion doctrine, which applies in actions for current benefits, has no place in an action to clarify rights to future benefits. *See id.*

In this case, plaintiff has suggested at least since 1979 that the Plan entitles him to disability benefits from his 50th birthday. Plaintiff likely could have brought a declaratory action prior to his 50th birthday to clarify his entitlement to future benefits. *See id.; Chambless v. Masters, Mates & Pilots Pension Plan,* 571 F.Supp. 1430, 1437–39 (S.D.N.Y.1983) (noting ERISA's liberalized ripeness requirements). Such a suit, arguably, would not have been subject to the exhaustion doctrine. *See Janowski.* But rather than filing a suit for a declaratory judgment, plaintiff waited until after he had turned 50 to file a suit asserting his right to receive current benefits. Since he sues for current benefits, plaintiff clearly must satisfy the exhaustion doctrine, *i.e.,* not only must plaintiff actually apply for pension benefits and be denied, but he must then exhaust all internal appellate procedures under the Plan before he may file suit in federal court to recover those benefits. *Wolf v. National Shopmen,* 728 F.2d 182, 185 (3d Cir.1984). Since the complaint nowhere mentions that plaintiff has actually applied for current benefits, nor suggests that plaintiff has pursued internal appellate procedures under the Plan, the complaint will be dismissed because under these circumstances, it is entirely premature.