John CAREY, Plaintiff–Appellant,

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 363 PENSION PLAN, Defendant–Appellee.**

**Docket No. 99–7059**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 21, 1999

Decided: Dec. 16, 1999

Mark G. Aberasturi, Goshen, NY, for Plaintiff–Appellant.

Andrew J. Turro, Meyer, Suozzi, English & Klein, P.C., Mineola, NY, for Defendant–Appellee.

Before: OAKES, KEARSE, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

The question presented, as a matter of first impression for this Court, is whether, or under what circumstances, a claim for pension benefits under § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), can accrue in the absence of a pension plan's denial of a formal application for benefits. Plaintiff John Carey appeals from a final judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*), entered December 14, 1998, granting a motion for summary judgment by defendant International Brotherhood of Electrical Workers Local 363 Pension Plan (the "Plan") on the ground that Carey's claim for pension benefits under § 1132(a)(1)(B) is time barred. The District Court concluded that a claim under ERISA accrues upon a clear repudiation by a plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits. We agree and, therefore, affirm the judgment of the District Court.

## I.

The following background facts are not in dispute. Carey, a 76–year–old retired electrical worker, was a member of the International Brotherhood of Electrical Workers ("IBEW") from 1950 to 1992. From 1965 until his retirement in 1992, Carey was a member of IBEW Local 363, and was a participant in the Plan during much or all of that time.

In 1989, Carey telephoned the Plan to inquire about the pension benefits that he would receive upon retirement. The Plan's Pension Secretary responded to Carey's inquiry on March 20, 1989, enclosing a letter dated March 8, 1989 from the Plan's actuaries to the Plan in reference to Carey. The March 8, 1989 letter from the

Plan's actuaries stated in relevant part that "Mr. Carey lost all his pension service, due to a break in service prior to being vested. This indicates that he is not eligible for a monthly pension."[1]

Carey responded to the Pension Secretary by letter dated April 11, 1989, in which he requested "the information that [the Plan] made available to [the] consulting actuaries that influenced their decisions that [he] was not eligible for a monthly pension." The Pension Secretary responded by letter dated April 17, 1989, enclosing the provisions of the Plan agreement concerning breaks in service and vesting.

Sometime in 1991, while Carey was still a member of IBEW Local 363, Carey wrote again to the Plan, stating his belief that he was eligible for pension benefits upon retirement. On July 11, 1991, the Plan Administrator responded that "it is our opinion and the opinion of our actuaries that you lost all your pension service due to a break in services prior to being vested." The Plan Administrator also advised Carey that he had a right to appeal this "decision" by writing to the Plan Trustees "asking that a review of the denial be made."

On August 10, 1991, Carey appealed the Plan Administrator's decision to the Plan Trustees. In a letter dated October 28, 1991, the Plan Administrator notified Carey that the Plan Trustees considered his appeal at a meeting on September 3, 1991, when they "again reviewed your pension service credits and upheld the decisions of the Fund Administrator and the Actuaries that you lost all your pension services credits due to the fact that you incurred a break in service prior to being vested." Carey admits that he received this letter in "early November of 1991."

On or about July 2, 1996, approximately four years after his retirement, Carey filed a formal application for pension benefits with the Plan, alleging that he was entitled to thirty-two years of service credits under the Plan agreement. By letter dated January 7, 1997, the Plan Administrator advised Carey that his application was denied because he had incurred a break in service in 1974. Carey appealed this decision to the Plan Trustees, who affirmed the decision on April 29, 1997.

On March 30, 1998, Carey commenced this action under 29 U.S.C. § 1132(a)(1)(B).[2] The complaint alleges that Carey is entitled to twenty-nine years of service credits under the Plan and that the Plan trustees abused their discretion and acted arbitrarily and capriciously in denying his application for pension benefits. On November 13, 1998, the Plan moved by Order to Show Cause for summary judgment, asserting that Carey's claim under § 1132(a)(1)(B) was time barred. On December 11, 1998, following oral argument, the District Court granted the Plan's motion from the bench. The District Court concluded that, although Carey did not file a formal application for pension benefits until July 1996, his claim under ERISA accrued no later than November 1991, when he received the Plan's October 28, 1991 letter advising him that the Plan Trustees had denied his appeal. Because Carey did not file suit within six years of the date his claim accrued, *see Miles v. New York State Teamsters Conference Pension and Retirement Fund*

---

1. Under the terms of the Plan agreement, a beneficiary forfeits any pension service credits that have not vested if he incurs a break in service, defined as three consecutive years in which he is credited with fewer than 500 hours of service. A beneficiary does not forfeit his pension service credits, however, if his failure to obtain 500 or more hours of service is attributable to a lack of available work. In the present case, Carey asserts that his alleged break in service was due to a lack of available work.

2. Section 1132(a)(1)(B) creates a cause of action for, *inter alia*, a participant in a pension plan covered by ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

*Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.1983) (holding that § 1132 claims arising in New York are subject to a six-year limitation period), the District Court dismissed the complaint. Judgment was entered on December 14, 1998, and this appeal followed.

## II.

■ On appeal, Carey contends that the District Court erred in holding that his ERISA claim accrued no later than November 1991. In Carey's view, his claim did not accrue until April 29, 1997, when the Plan Trustees affirmed the denial of his only formal application for benefits. We review the District Court's grant of summary judgment *de novo,* construing the evidence in the light most favorable to Carey and drawing all reasonable inferences in his favor. *See, e.g., Freeman v. Glaxo Wellcome, Inc.,* 189 F.3d 160, 163 (2d Cir.1999). We will affirm if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c).

[2] As the Supreme Court has noted, the length of a limitation period for instituting suit in federal court "inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Statutes of limitation serve several important policies, including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses. *See, e.g., Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). For these reasons, statutes of limitation "are not to

be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam). Indeed, strict adherence to limitation periods "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

■ In *Miles,* we held that a plaintiff's cause of action under ERISA accrues "when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiar[y]." *Miles,* 698 F.2d at 598 (internal quotation marks omitted) (emphasis in original); *accord Larsen v. NMU Pension Trust of the NMU Pension & Welfare Plan,* 902 F.2d 1069, 1073 (2d Cir.1990). As many courts have recognized, the limitation period therefore generally begins to run when a plan denies a beneficiary's formal application for benefits. *See, e.g., Lewis v. John Hancock Mut. Life Ins. Co.,* 6 F.Supp.2d 244, 247 (S.D.N.Y.1998); *Patterson–Priori v. Unum Life Ins. Co. of Am.,* 846 F.Supp. 1102, 1106 (E.D.N.Y.1994). The question presented here, however, is whether a plan's clear repudiation triggers the statute of limitation, even in the absence of a formal application.

Although we have not previously considered this question, several other circuits have done so. *See Union Pac. R.R. v. Beckham,* 138 F.3d 325, 330–31 (8th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 56, 142 L.Ed.2d 43 (1998); *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 65–67 (7th Cir.1996); *Martin v. Construction Laborer's Pension Trust,* 947 F.2d 1381, 1384–86 (9th Cir.1991).[3] In each of these cases, the Court held, in part relying on our decision in *Miles,* that a plaintiff's cause of action accrues upon a clear repudiation that is known, or should

---

**3.** *Martin* involved a claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187, not ERISA. Nevertheless, the Court relied heavily, and explicitly,

on cases arising under ERISA. *See Martin,* 947 F.2d at 1384 n. 6. Furthermore, the Court's reasoning was not specific to the LMRA.

be known, to the plaintiff—regardless of whether the plaintiff formally applied for benefits. *See Beckham,* 138 F.3d at 330–31; *Daill,* 100 F.3d at 66 & n. 5; *Martin,* 947 F.2d at 1384–85. In *Beckham,* the Eighth Circuit reasoned that such a result is consistent with the "discovery rule"—the rule that generally governs when a federal claim accrues—pursuant to which "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Beckham,* 138 F.3d at 330.

■■■ Carey urges us to reject these cases for any one of three reasons. First, he contends that several policy considerations—including avoidance of piecemeal litigation, avoidance of premature litigation, promotion of dispute resolution by a plan itself, and recognition of an employee's reluctance to sue his plan while still a member of the associated union—favor treating the denial of a formal application for benefits as the sole possible accrual date. Second, he asserts that, under § 1132(a)(1)(B), an action for *present* benefits—as opposed to a declaratory judgment action with respect to *future* benefits—accrues only upon denial of an actual application for benefits. Finally, Carey argues that, irrespective of whether an ERISA claim can accrue in the absence of a formal application for benefits, when an employee *has* filed such an application—as Carey did—the claim should accrue upon denial of that application. We find these arguments to be without merit, and instead follow the Seventh, Eighth, and Ninth Circuits in holding that an ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits.[4]

First, we are unpersuaded by Carey's reliance on policy considerations. Indeed, we agree with the Ninth Circuit that the rule favored by Carey would undermine the policies served by statutes of limitation. As the Ninth Circuit explained, "To hold [that an ERISA claim accrues only upon denial of a formal application] would require all pre-benefits claims against an employee's pension fund to be delayed until a formal application for benefits is filed. Because an application for pension benefits is normally not made until after an employee has retired, the delay, with its negative effects on the availability of witnesses and evidence, is potentially great." *Martin,* 947 F.2d at 1385.

To be sure, requiring an ERISA plaintiff to file suit upon a plan's clear repudiation even in the absence of a formal application may, in some instances, result in piecemeal litigation, or litigation of claims that the plan might otherwise have resolved internally. In addition, an ERISA plaintiff may very well be reluctant to sue his plan while he is still a member of the associated union. But these concerns are not substantial enough to warrant a departure from the general rule that a plaintiff's claim accrues when he discovers, or with reasonable diligence should discover, the injury that gives rise to his claim. Moreover, these types of concerns are present in many other contexts—for example, in litigation between an employee and his employer under Title VII—where we have enforced statutes of limitation. *See, e.g., Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712–13 (2d Cir.1996) (discussing the statute of limitation applicable to Title VII claims).

■■■ Next, we find no merit in Carey's argument that § 1132(a)(1)(B) creates separate causes of action for (1) a declaratory judgment with respect to future benefits,

---

4. Although we referred in *Miles* to a clear repudiation that is "known" to the beneficiary, *see* 698 F.2d at 598, nothing in the opinion implies that a cause of action accrues only when a plaintiff has *actual* knowledge—as opposed to constructive knowledge. We agree with the *Beckham* Court that accrual is triggered by either actual knowledge or constructive knowledge of a clear repudiation.

and (2) entitlement to present benefits—with correspondingly different accrual dates. First, contrary to the conclusion of at least one court, *see Belnomi v. Sonoco Prods. Co.*, 686 F.Supp. 520, 521 (E.D.Pa. 1988), nothing in § 1132(a)(1)(B) supports such an interpretation. Second, such an interpretation effectively would render the limitation period meaningless: Merely by delaying his formal application for benefits—for strategic reasons or otherwise—a plaintiff could sue long after he initially pursued his claims with the plan. *See Daill*, 100 F.3d at 67. Because, "whenever possible, statutes should be interpreted to avoid unreasonable results," *Dougherty v. Carver Fed. Sav. Bank*, 112 F.3d 613, 624 (2d Cir.1997) (citing *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982)), we decline to construe § 1132(a)(1)(B) in a way that would render the limitation period a limit in name only.

Finally, Carey's argument that plaintiffs should be treated differently depending on whether they *eventually* file formal applications for benefits has no basis in law or reason. To the contrary, such a rule would treat similarly situated employees differently based only on the form of their initial inquiries to a plan: "[S]ome employees would file claims (and appeals) and not have their causes of action accrue, while others would file essentially the same claim in the form of an application and have theirs accrue." *Daill*, 100 F.3d at 66. Moreover, such a rule would again render the statute of limitation meaningless: Any employee who *had* pursued his claim, albeit informally, to a final resolution within the plan, but had failed thereafter to sue within the limitation period, could nevertheless revive his stale claim merely by filing a formal application. *See Martin*, 947 F.2d at 1385.

In sum, we hold that a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits. Applying this rule, we affirm the judgment of the District Court that Carey's ERISA claim is barred by the six-year statute of limitation. Whether or not Carey filed a formal application for benefits before his retirement in 1992, the Plan clearly and unequivocally repudiated Carey's entitlement to benefits in its October 28, 1991 letter, which reported that the Plan Trustees had denied his appeal. This repudiation became known to Carey no later than early November 1991, when, by his own admission, he received the Plan's letter. *Cf. Daill*, 100 F.3d at 66–67 (holding, on similar facts, that the plaintiff's claim was time barred); *Martin*, 947 F.2d at 1385–86 (same).

Despite Carey's argument to the contrary, the fact that the Plan did not specify in its October 28, 1991 letter when and why he had incurred a break in service is irrelevant to the fact that there was a known repudiation. *Cf. Ambris v. Bank of New York*, No. 96 Civ. 0061(LAP), 1998 WL 702289, at *5 (S.D.N.Y. Oct.7, 1998) ("The fact that [the plaintiff] misunderstood the technical term of art that describes the reason for her denial of benefits does not change [the clarity of the plan's repudiation]."). Similarly, it is immaterial that, until at least September 1991, the Plan continued to accept Carey's service credits as his "home local" under a reciprocal arrangement with another IBEW Local. *Cf. Martin*, 947 F.2d at 1386–87 (holding that the defendant plan's subsequent reconsideration of plaintiff's claim for benefits did not renew the statute of limitation period). By November 1991, Carey "[had] discover[ed], or with due diligence should have discovered, the injury that is the basis of the litigation." *Beckham*, 138 F.3d at 330. Thus, by November 1991, Carey's claim accrued, and he had until November 1997 at the latest to file suit. Because he did not file suit until March 30, 1998, his claim is barred.

### III.

For the reasons stated above, we conclude that a plaintiff's cause of action un-

der ERISA accrues when a plan clearly and unequivocally repudiates the plaintiff's claim for benefits and that repudiation is known, or should be known, to the plaintiff. In light of this holding, we affirm the District Court's grant of summary judgment in favor of the Plan.