T. Edward VAIL, Plaintiff,

v.

**PLUMBERS, PIPE FITTERS AND APPRENTICES LOCAL NUMBER 112 PENSION FUND, Defendant.**

No. 99–CV–1878.

United States District Court,
N.D. New York.

Jan. 22, 2001.

Levene, Goulding & Thompson, LLP, Binghamton, NY (John H. Hartman, of counsel), for plaintiff.

Blitman & King, LLP, Syracuse, NY (Jennifer A. Clark, of counsel), for defendant.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiff T. Edward Vail commenced the instant action pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), contending that he did not incur a break in service and, thus, is entitled to additional benefits under his pension plan (the "plan"). Plaintiff seeks a money judgment for the difference between the benefits that has received to date and the amount of benefits to which he claims he is entitled based upon a recalculation of benefits excluding any break in service. Presently before the Court are Defendant's motion and Plaintiff's cross-motion for summary judgment pursuant to FED. R. CIV. P. 56.

## I. BACKGROUND

Plaintiff became a member of the Plumbers, Pipe Fitters and Apprentices Local Number 112 (the "Union") in 1965. In 1956, the Union established the pension plan. Beginning in 1966, Plaintiff began to receive pension credits while he was work-

ing for J & K Plumbing & Heating. Plaintiff continued to work for J & K until he lost his job in 1975. Thereafter, Plaintiff was unemployed for a period of approximately six months.

Later in 1975, Plaintiff began working as a project manager for Ivy Mechanical & Electrical Associates, Inc. ("Ivy"). While at Ivy, Plaintiff occasionally, but not frequently, worked with the tools of the plumbing trade. More often, he was responsible for giving directions to foremen, ordering materials for jobs, attending job meetings, making reports of job meetings, and supervising the progress of the projects. Ivy was a party to a collective bargaining agreement ("CBA") with the Union that covered journeyman and apprentices. With respect to the pension plan, the CBA specifically covered "plumber and/or steamfitter foremen, journeymen, and apprentices covered by this agreement." *See* Nov. 10, 2000 McMaster Aff., Ex. D, p. 9.

When he commenced working for Ivy, Plaintiff knew that it would not make contributions to his pension plan and, in fact, Ivy did not remit pension benefits on Plaintiff's behalf. Despite this knowledge, Plaintiff apparently believed that he was entitled to pension benefits and that the plan should have attempted to recover such benefits on his behalf. Plaintiff inquired of the Union's business manager whether the plan could attempt to recover benefits from Ivy. In furtherance of Plaintiff's request, by letter dated March 9, 1978, Bernard King, Esq., counsel to the plan, wrote to Ivy stating that:

> It is our understanding that you have an employee, T. Edward Vail, who is covered by the [CBA] ... but for whom no fringes have been paid.... This brings you in violation of the contract and of the law and we would ask you to immediately correct this problem.

Dec. 7, 2000 Vail Aff., Ex. A. Ivy responded to King's letter stating that "Mr. Vail is and has always been part of management during his employ with this firm. The [CBA] has no jurisdiction over management personnel." Because the Union believed Ivy's representation that Plaintiff was a member of management and, thus, not covered by the CBA, it took no further action.

After Plaintiff's job with Ivy ended in 1980, Plaintiff worked for Evans Mechanical where he continued to work until he retired in 1998. Evans made contributions to the pension plan on Plaintiff's behalf.

From 1977 to 1994, Douglas McMaster, who served as the plan's fund manager, provided Plaintiff with annual statements of the amount of his pension credits, which indicated that he had zero pension credits for the years 1975 through 1980. In 1985, Plaintiff inquired as to the status of his pension benefit credits. By letter dated May 1985, Defendant forwarded Plaintiff a letter from the plan's actuaries stating that Plaintiff had "9.985 years of interrupted Pension Service which ended on 12/31/74, and a period of 4.45 years of Pension Service from 1/1/81 through 12/31/84." Nov. 10, 2000 McMaster Aff., Exs. H, I. Defendant further advised that because Plaintiff's "Pension Service is classified as interrupted, his pension benefits will ... be computed in two parts." *Id.* Defendant also provided Plaintiff with computations indicating that he had incurred a break in service and received zero service credits for the period December 31, 1975 through December 31, 1980.

Plaintiff did not again inquire about his pension benefits until 1994. At that time, he wrote a letter asking what his benefits would be and asking whether the trustees would forgive his break-in-service during the years 1975–1980. By letter dated January 4, 1995, Defendant responded that it would not declare a period of chronic unemployment and that Plaintiff had a break in service for the years 1975–1980 that would lower his pension benefits. Plaintiff made several subsequent attempts to appeal Defendant's determination, to no avail.

In or about 1998, Plaintiff came to believe that Defendant was using the wrong plan document to calculate his break in service. Plaintiff contended that, rather than use the 1977 plan, Defendant should have used the later plan documents, which Plaintiff believed to be retroactive. The 1973 and 1977 plan documents provided as follows:

> Article V. Section 2. An employee will be charged with a Break Year for any Plan Year during which he did not or does not earn at least 500 Total Hours....

> Section 4. If an employee experiences five consecutive Break Years he will forfeit all of his previous Credited Service unless ... (c) the five consecutive Break Years began after June 30, 1972 and the employee had at least six Service Years at the time that the five years began....

> Section 5. If an employee experiences five consecutive Break Years under the conditions provided in ... c of Section 4., all of his previously credited service will be classified as Interrupted Credited Services.

> Section 6. The following periods are to be treated as grace periods and are to be added to the consecutive years specified in Section[ ] ... 4 in determining whether Service Years or Credited Service has been lost .... (b) Periods of chronic unemployment in the jurisdiction of the Union (as approved by the Trustees).

Nov. 10, 2000 McMaster Aff., Ex. C. The 1985 (and later) plan documents contain similar provisions to the 1973 and 1977 plan documents, but, with respect to the grace period definition, provide that:

> The following periods do not constitute Break Years for any Plan Year before January 1, 1983: ... (B) Periods during which the Participant was available for work but was unable to perform Covered Employment because no Covered Employment was available for him.[1]

According to Plaintiff, he is entitled to a grace period under the newer plan documents because he was available for covered work, but none was offered to him.[2]

Presently before the Court are: (1) Defendant's motion for summary judgment pursuant to FED. R. CIV. P. 56 contending that (i) Plaintiff's claim is barred by the statute of limitations; and (ii) Defendant's determinations were not arbitrary and capricious; and (2) Plaintiff's cross-motion for summary judgment contending that he is entitled to a determination of liability as a matter of law.

## II. DISCUSSION

### A. Summary Judgment Standard

In reviewing the parties' motions, the Court will apply the familiar summary judgment standard, which need not be restated here. *See Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999) (setting forth summary judgment standard); *Phipps v. New York State Dep't of Labor*, 53 F.Supp.2d 551 (N.D.N.Y.1999) (same); *Riley v. Town of Bethlehem*, 44 F.Supp.2d 451, 458 (N.D.N.Y.1999) (same).

### B. Statute of Limitations

█ It is settled in this Circuit, and the parties agree, that the instant action is governed by the six year statute of limitations founds at N.Y.C.P.L.R. § 213. *See Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). "A plaintiff's ERISA cause of action accrues

---

1. This is different from the prior plan documents that required the trustees to declare a period of chronic unemployment.

2. Defendant disputes that Plaintiff was available for covered work because he was continuously employed by Ivy during the relevant period, work was available outside the Union's geographic region, and Plaintiff refused to work outside of such region due to family obligations.

and the six-year statute of limitations period begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." *Miles,* 698 F.2d at 598 (internal quotation marks and citation omitted); *see also Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,* 201 F.3d 44, 47 (2d Cir. 1999); *Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan,* 902 F.2d 1069, 1073–74 (2d Cir.1990).

Here, there was a clear repudiation by Defendant that was made known to Plaintiff in May 1985, and Plaintiff apparently concedes as much. *See* Pl. Memo. of Law at 11 ("This was a clear repudiation of Vail's claim in 1985, even if it was wrong."); *see also Carey,* 201 F.3d at 48 (holding that "a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits."). At that time, Defendant forwarded to Plaintiff a copy of a letter from the plan's actuary stating that "[h]e has a period of 9.985 years of interrupted Pension Service which ended on 12/31/74, and a period of 4.45 years of Pension Service from 1/1/81 through 12/31/84," that his "Pension Service is classified as interrupted . . . [and] his pension benefit will . . . be computed in two parts." Defendant also provided Plaintiff with a calculation indicating the break in service and that he did not receive any service credits for the period December 31, 1975 through December 31, 1980. Thus, by May 1985, Plaintiff knew, or should have known, that Defendant considered him to have a break in service, which would have the effect of lowering his pension benefits. This was the time Plaintiff should have been aware of the injury that is the basis of this litigation. *See Marotta v. Road Carrier Local 707 Welfare Fund,* 100

F.Supp.2d 149, 157 (E.D.N.Y.2000). Because Plaintiff's cause of action accrued in 1985 and the instant litigation was not commenced until 1999, his claim is time-barred.

▮ Plaintiff argues that his claim is, nonetheless, timely because:

In 1987, still within the statute of limitation, the plan's participants were given a summary plan description which for the first time told them that the grace period definition had been changed. At this point Vail was entitled to believe, based on this summary plan description, that with the change in the grace period definition, he had not incurred a break in service while at Ivy. So in 1987 there was a notice from the trustees in the form of a summary plan description to the effect that their prior determination was no longer controlling based on an expressly retroactive amendment of the grace period definition. At best this meant that Vail had no reason to sue the defendant. . . . This information at least meant that the trustees' prior determination was no longer a clear repudiation of his claim. At that point the statute of limitations no longer continued to run.

Pl. Memo. of Law at 11. The Court disagrees with this conclusion.

Even assuming Plaintiff was not aware of the change in the grace period definition until he received the summary plan description in March 1987, based on the language of the 1985 plan document, *see supra* at p. 178 and *infra* at n. 3, it is not clear that Plaintiff was automatically entitled to the benefit of the new grace period definition or that he met the requirements of the new definition. Rather, there had to be a determination that the new grace period definition applied retroactively to Plaintiff's situation[3] and that Plaintiff

3. The preamble to the 1985 plan provides that "[t]his amended and restated Plan is not intended to diminish or increase the benefits of any Participant or Beneficiary as fixed under prior Plan documents, nor is it intended to reinstate benefits forfeited under prior versions of this Plan." Hartman Aff., Ex. C, p. 1. At the time the 1985 plan became effective, Plaintiff had already incurred his break in service as per the 1977 plan (he had five

"was available for work but was unable to perform Covered Employment because no Covered Employment was available for him."[4] Hartman Aff., Ex. C, p. 8. These were issues to be determined by the plan's trustees. *See Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243 (2d Cir.1999) (discussing standard of review to be used by courts in reviewing plan trustees' resolution of factual issues); *see also Administrative Comm. of the Time Warner, Inc. v. Biscardi*, 2000 WL 1721168, *6 (S.D.N.Y. Nov.17, 2000); McMaster Aff., Ex. A, § 17 ("[T]he trustees shall have full and exclusive authority to determine all questions of coverage and eligibility."). Thus, absent clarification by Defendant, it would not have been reasonable for Plaintiff to assume that he fell within this new definition and that this worked as a renunciation of Defendant's determination that Plaintiff had a break in service. Upon learning of the change of the grace period definition, Plaintiff should have been particularly aware of a potential breach of the agreement given Defendant's prior repudi-

ation and he should not have assumed that all was well.

In addition, Plaintiff received annual statements from the pension fund for, at least, the years 1977 to 1994. These statements indicated the amount of accrued pension credits. Significantly, even after he received the March 1987 summary plan description, the statements continually indicated that Plaintiff had zero pension credits and that he had a break in service for the years 1975 through 1980. *See* Def. N.D.N.Y.L.R. 7.1(a)(3) stmnt., ¶ 30; Pl. N.D.N.Y.L.R. 7.1(a)(3) stmnt., ¶ 30; Vail Dep. at 50. This should have alerted Plaintiff to the possibility that Defendant had not renounced its prior determination regarding his break in service.

Lastly, there is no evidence supporting Plaintiff's theory regarding the statute of limitations. Nowhere does Plaintiff affirmatively state that he actually believed as of March 1987 that he no longer had a dispute with Defendant regarding his break in service because of the change in the grace period definition.[5] In his affidavit, Plaintiff states that:

consecutive break years as of 1980) and, thus, had forfeited certain benefits (his pension would be calculated in two segments: one segment for his pre 1975 covered work, which would be calculated at a lower rate of $92.00, and one for his post 1980 covered work, which could be calculated at $102.00). It, therefore, would not be unreasonable for the plan's trustees to conclude that Plaintiff's benefits were fixed under the prior plan and that he did not fall under the new grace period in the 1985 plan. Similarly, although it appears that the 1985 plan applies retroactively because it changed the definition for break years incurred prior to January 1, 1983, it is a reasonable construction of the plan to find that it did not apply retroactively to Plaintiff because, as just discussed, he had forfeited certain benefits under a prior plan due to his break in service and the 1985 plan was not intended to restore forfeited benefits.

Moreover, it could be detrimental to Plaintiff to construe the 1985 plan retroactively because he could be found to have forfeited certain benefits (had a break in service) after only three (as opposed to five) consecutive break years because his break began prior to January 1, 1976. *See* Hartman Aff., Ex. C, p. 9.

4. This also is questionable considering that Plaintiff had full-time employment with Ivy, covered work was available outside the Union's geographic jurisdiction, *see* Def. N.D.N.Y.L.R. 7.1(a)(3) stmnt, ¶ 14; Pl. N.D.N.Y.L.R. 7.1(a)(3) stmnt, ¶ 14, Vail Dep. at 26, and Plaintiff refused to accept work outside the Union's geographic area due to his family situation. *See* Vail Aff., ¶¶ 4, 18; Vail Dep. at 27. It, thus, is far from clear that Plaintiff fell within the new grace period definition.

5. In his affidavit, Plaintiff states that "[a]s a result of the 1987 summary plan description, I would have learned that my availability for covered employment and the fact that no covered employment was offered me while I worked at Ivy would mean that when I applied for my retirement benefits, the trustees under the new grace period provision could not find that I had a break in service." Vail Aff., ¶ 44. This statement, together with the totality of Plaintiff's affidavit, does not indicate that he subjectively believed as of 1987 that he no longer had a dispute with Plaintiff and, as previously discussed, it certainly was not reasonable for Plaintiff to believe that his

Over the years, I have received papers and documents from the pension plan. I cannot say that I reviewed them thoroughly, and I did not keep all of them. I believe that I must have received summary plan descriptions but do not remember reading them. I never read any of the actual pension plan agreements or the full text of any of the plans that were in effect from time to time. Pl. Aff., ¶ 26. Plaintiff then states that it was not until 1998 that he learned that Defendant may have been applying the wrong plan document and that there had been a change in the grace period definition. *See id.*, ¶¶ 34–38, 43.[6] It is disingenuous for Plaintiff to contend that he relied upon the changes outlined in the March 1987 summary plan description and assumed that that worked as a renunciation of Defendant's repudiation when he concedes that he did not read such documents and that he was not aware of the changes contained in the grace period definition until 1998.[7] In fact, Plaintiff's November 4, 1994 letter to McMaster indicates that he was aware at that time of the change in the grace period definition and that he did not believe the change in grace period definition worked an automatic renunciation of Defendant's prior determination regarding his break in service. In that letter, Plaintiff specifically requests that "the break be forgiven," evincing that he was

fully aware that Defendant continued to believe that he had a break in service. It is curious why Plaintiff would have checked the status of his pension benefits and requested Defendant to forgive his break in service in 1994 if he assumed that the 1985 (or 1987) change to the grace period definition rectified the reduction of benefits caused by his break in service. There was simply no basis upon which Plaintiff could reasonably conclude that the break in service rule had changed, that the new rule automatically entitled him to a grace period, and that Defendant's prior determination was no longer a clear repudiation of his claim. At the very least, even if Plaintiff actually learned of the plan change in 1987 and, thus, subjectively believed that he fell within the new grace period definition, then he had a duty at that time to exercise reasonable diligence and inquire whether that effected Defendant's prior determination. *See Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir.1998) ("[A] plaintiff's ignorance of injury does not toll a statute of limitations if, with the exercise of reasonable diligence, the plaintiff could have learned of the wrong prior to the date of actual discovery.... [H]ad [plaintiff] requested his record earlier, he would earlier have learned what he now claims was in it."). Based upon the foregoing, the Court concludes as a matter of law that Plaintiff was aware, or should

---

"injury" (the determination that he had a break in service) no longer existed.

**6.** Portions of paragraphs 34–38 and 43 of Plaintiff's affidavit read as follows:

34. In 1998, I took my case to the . . . United States Department of Labor. . . .

35. What I then learned . . . was that [Defendant was] . . . using the wrong plan document and therefore the wrong grace period provision in considering my case. . . .

37. According to the plan documents and the summary plan descriptions which the DOL obtained in its investigation, the grace period definition was . . . changed. . . .

43. Also, as a result of the DOL investigation, I learned that the new grace period provision first appeared in a plan document dated January 1987, and then in a summary plan description dated March 19, 1987.

**7.** Plaintiff's statement that the new grace period provision appeared in a plan document dated January 1987 is plainly wrong and in direct contravention of the documents he submitted to the Court. In actuality, the change appeared in the January 1985 plan documents, which were adopted on March 13, 1986. *See* Hartman Aff., Ex. C, p. 26.

Further, upon a careful review of the evidence, it is clear that Plaintiff was actually aware of the change in the grace period definition by 1994. *See* Howard Aff., Ex. B. In his letter dated November 8, 1994 to McMaster, Plaintiff cites to the grace period definition contained in the April 1993 summary plan description.

have been aware, of the repudiation by 1987 at the latest, that there was no subsequent conduct by Defendant to change that repudiation and, therefore, the instant action is untimely.

## III. CONCLUSION

For the foregoing reasons, the Court finds that the instant matter is time-barred. Accordingly, Defendant's motion for summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, and the Complaint is DISMISSED.

IT IS SO ORDERED