**Douglas BRENNAN, et al., Plaintiffs,**

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY, et al., Defendants.**

No. 02 Civ. 7770(SAS).

United States District Court,
S.D. New York.

May 9, 2003.

---

Raymond Nardo, Mineola, NY, for Plaintiffs.

Katharine H. Parker, Russell L. Hirschhorn, Proskauer Rose LLP, New York City, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On September 27, 2002, Douglas Brennan and six other plaintiffs[1] sued Metropolitan Life Insurance Company ("MetLife"), six MetLife insurance plans,[2] and the administrators of those plans ("defendants") to recover retroactive employee benefits under section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*[3] Defendants now move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b) on the ground that it is time-barred. For the reasons set forth below, the motion is granted.

## I. FACTS[4]

MetLife is a leading provider of insurance and other financial services to a broad spectrum of individual and institutional customers. *See* 2/25/03 Affidavit of Christina Teufel, Assistant Vice President of Facilities and Services at MetLife ("Teufel Aff."), ¶ 2. MetLife hires various service providers and consultants who work as independent contractors. *See id.* MetLife does not offer its independent contractors the opportunity to participate in any of its employee benefit plans, which are reserved for "employees". *See* Second Amended Complaint ("Compl."), Ex. A to 2/26/03 Affidavit of Katherine H. Parker, counsel for MetLife, ¶ 28; 2/26/03 Affidavit of Linda Hogan, Assistant Vice President of Human Resources at MetLife ("Hogan Aff."), ¶ 2. Since January 1996, most of MetLife's employee benefit plans have expressly provided that the term "employee" does not include "any individual who is classified by the Employer as an independent contractor notwithstanding that such person is later determined by a court of competent jurisdiction or the Internal Revenue Service to be a common law employee." Compl. ¶ 36; Hogan Aff. ¶ 2.

Plaintiffs worked for MetLife in the 1980s and 1990s in freelance capacities,

---

**1.** The other plaintiffs are Lenworth Francis, Melvin Griffin, Leonard Grow, Richard Oszust, Joanna Roy and Michael Sandstrom.

**2.** The six plans are: Separation Allowance Plan, Transition Assistance Plan, Retirement Plan, Savings and Investment Plan, Options Plan, and Welfare Plan (collectively, the "Plans").

**3.** Plaintiffs also seek statutory penalties under section 502(c)(1) of ERISA for MetLife's failure to provide documents they requested regarding the employee benefits plans in ques-

tion. In addition to their claims under ERISA, plaintiffs Brennan and Francis assert a third cause of action, alleging that they were denied overtime compensation under New York Labor Law §§ 190 *et seq.* and 650 *et seq.* and N.Y.Code Rules & Regulations Title 12, section 142.

**4.** For purposes of this motion, the facts alleged in the Complaint are taken as true and presented in the light most favorable to plaintiffs. *See Thomas v. City of New York,* 143 F.3d 31, 37 (2d Cir.1998) (citation omitted).

assisting with the development of advertising and marketing materials. Compl. ¶¶ 3–10, 25; Teufel Aff. ¶ 3. Their dates of employment follow: Ozsust 1983–1993; Griffin 1982–1994; Francis 1984–1998; Roy 1986–1994; Sandstrom 1989–1999;[5] and Brennan 1987–1999.[6] Compl. ¶¶ 5–10, 25.

Throughout their tenure at MetLife, plaintiffs were classified as freelancers and paid as independent contractors. *Id.* ¶¶ 25, 26. Plaintiffs were required to sign standard form independent contractor agreements.[7] Teufel Aff. ¶ 5. The Agreements expressly provided that plaintiffs were not entitled to benefits under any of MetLife's employee benefit plans:

> For all purposes of this Agreement, Supplier shall have the status of an independent contractor and shall in no sense be considered an employee of MetLife while performing services under this Agreement. It is understood that supplier shall not be entitled to or be eligible to participate in any benefits or privileges given to or extended by MetLife to its employees including, but not limited to, participation in Insurance and Retirement Programs, Social Security Coverage, Worker's Compensation, or any state disability benefits.

Independent Supplier Agreement, Ex. C to Teufel Aff.; *see also* Technical Assistance Agreement, Ex. A to Teufel Aff.; Independent Consultant Agreement, Ex. B to Teufel Aff.

On October 16, 2000, several of the plaintiffs complained about their denial of benefits while at MetLife. *See* Compl. ¶ 37; 10/16/00 Letter from Raymond Nardo, counsel for plaintiffs, to MetLife's Plan Administrator ("Claim Ltr."), Ex. 1 to 3/19/03 Declaration of Raymond Nardo in Opposition to Defendants' Motion to Dismiss ("Nardo Dec."). Plaintiffs claimed in particular that MetLife had mis-classified them as independent contractors rather than employees.[8] *See* Compl. ¶ 29; Claim Ltr. at 1. Plaintiffs also requested documentation from MetLife regarding its benefit plans. *See* Compl. ¶ 39; Claim Ltr. at 2.

MetLife denied plaintiffs' claims for benefits, as well as their requests for plan documents. *See* Compl. ¶¶ 41–42; 2/12/01 Letters to plaintiffs from James N. Heston, Senior Vice President of Compensation and Benefits, and Susan Berger, Vice President of Employee Relations, Ex. 2 to Nardo Dec. Plaintiffs requested reconsideration of MetLife's determinations. *See* Compl. ¶ 43; 4/9/01 Letter from Nardo to Mark A. Schuman, Senior Counsel for MetLife, Ex. 3 to Nardo Dec. Plaintiffs' appeals were denied by MetLife in June 2001. *See* 6/7/01 Letters to plaintiffs from Christine V. Burden and Lawrence S. Craven, Assistant Vice Presidents of Benefits, Ex. 4 to Nardo Dec.

---

**5.** From 1999 to 2001, Sandstrom was an employee of Adecco, a temporary staffing agency, but provided services to MetLife. *See* Teuffel Aff. ¶ 3.

**6.** From May 1999 to August 1999, Brennan was also an employee of Adecco, but provided services to MetLife. *See id.*

**7.** These agreements have had various titles over the years, such as: Technical Assistance Agreements, Independent Consultant Agreements, and Independent Supplier Agreements

(collectively, "Agreements"). *See* Teufel Aff. ¶ 5.

**8.** Plaintiffs performed work on MetLife's property with MetLife's equipment. Compl. ¶ 30. They were paid by the hour. *Id.* ¶ 31. They attended staff meetings at MetLife and received assignments with deadlines from supervisors at MetLife. *Id.* ¶¶ 33–34. Plaintiffs were required to have their vacation and leave time approved in advance by MetLife. *Id.* ¶ 39.

## II. DISCUSSION

### A. Plaintiffs' Claims Under Section 502(a)(1)(B) Are Dismissed as Time–Barred

Plaintiffs allege that MetLife violated section 502(a)(1)(B) of ERISA, which reads, in pertinent part, as follows:

(a) Persons empowered to bring a civil action A civil action may be brought-

(1) by a participant or beneficiary-

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a). Defendants contend that plaintiffs' claims under section 502(a)(1)(B) are time-barred.

Although ERISA does not prescribe a statute of limitations for violations of section 502(a)(1)(B), the appropriate statute of limitations is six years—the limitations period specified in the most analogous state statute. *See Miles v. New York State Teamsters Conference Pension and Ret. Fund,* 698 F.2d 593, 598 (2d Cir.1983) (holding that the six-year limitations proscribed by section 213 of the New York Civil Practice Law and Rules applies in ERISA actions) (citations omitted). A plaintiff's ERISA cause of action accrues "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. International Bhd. of Elec. Workers Local 363 Pension Plan,* 201 F.3d 44, 49 (2d Cir.1999). To hold otherwise, as the Second Circuit has recognized, " 'would require all pre-benefits claims against an employee's pension fund to be delayed until a formal application for benefits is filed,' " which could have enormous " 'negative effects.' " *Id.* (quoting *Martin v. Construction Laborer's Pension Trust,* 947 F.2d 1381, 1385 (9th Cir.1991)). Thus, "[o]nce a plaintiff is on clear notice that she is not entitled to benefits, the cause of action accrues." *Ambris v. Bank of New York,* No. 96 Civ. 0061, 1998 WL 702289, at *6 (S.D.N.Y. Oct. 2, 1998).

■ Defendants argue that plaintiffs' claims for benefits accrued on their first day of work for MetLife because they knew at that point that they were hired as freelancers and would not receive employee benefits. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def.Mem.") at 6. Plaintiffs allege that their claims did not accrue until the plan administrators rendered a final denial of their benefits claims. *See* Brief on Behalf of Plaintiffs in Opposition to Defendants' Motion to Dismiss ("Pl.Mem.") at 5.

The Second Circuit has declined to reach the issue at hand—namely, whether the signing of an independent contractor agreement qualifies as a repudiation by the fiduciary sufficient to trigger the statute of limitations. *See Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 135 (2d Cir.2001) (finding it "premature" to address defendants' statute of limitations defense because plaintiff had not yet exhausted her administrative remedies). However, all of the district courts that have considered claims made by individuals who were classified or treated as independent contractors have held that the statute of limitations begins to run when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits. *See, e.g., Schultz v. Texaco Inc.,* 127 F.Supp.2d 443, 448 (S.D.N.Y.2001) (finding that plaintiffs' claims accrued when they were taken off defendants' payrolls because they knew or should have known at that time that they were being reclassified as independent

contractors and that their benefits were being repudiated); *Ambris,* 1998 WL 702289, at *4–5 (finding that plaintiff's cause of action accrued approximately six months after she began work because she understood at that time that she was considered a part-time employee and was therefore ineligible for benefits); *Berry v. Allstate Ins. Co.,* 252 F.Supp.2d 336, 343 (E.D.Tex.2003) (finding "the date of accrual would be at or near·the date [plaintiffs] were hired because it is undisputed that they were informed from the beginning of their employment that they would not be able to participate in [defendant's] benefit plans"); *Kryzer v. BMC Profit Sharing Plan,* No. 01 Civ 299, 2001 WL 1587177, at *4 (D.Minn. Nov. 1, 2001) (finding that plaintiff knew, or should have known, when he signed the first independent contractor agreement that he would not receive benefits); *Bolduc v. National Semiconductor Corp.,* 35 F.Supp.2d 106, 120 (D.Me.1998) (finding plaintiff's claim for benefits accrued when he was first hired as a Facilities Engineer/Project Manager because he knew, at that point, "that he was being hired as an independent contractor and that, by virtue of this status, he would not receive employment benefits"); *Kienle v. Hunter Eng'g Co.,* 24 F.Supp.2d 1004, 1006–07 (E.D.Mo.1998) (finding plaintiff's claims accrued "when he signed the agreement clearly informing him that he would be considered an independent contractor and not an employee"). Thus, a claim for benefits under ERISA may accrue "before

a formal denial, and even before a claim for benefits is filed," upon a clear repudiation that is "known" to the beneficiary. *Union Pacific Railroad Co. v. Beckham,* 138 F.3d 325, 330 (8th Cir.1998) (citing *Miles,* 698 F.2d at 598).

Here, it is undisputed that all of the plaintiffs knew from their first day of work that they were working as freelancers and would not be entitled to benefits. *See* Compl. ¶¶ 25, 28. Indeed, plaintiffs' assertion of this fact is a judicial admission by which they are bound. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir.1985) (citing *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983)); *see also Mull v. Ford Motor Co.,* 368 F.2d 713, 715 (2d Cir.1966). MetLife required plaintiffs to sign Agreements expressly stating they would be paid as independent contractors and would be ineligible to participate in any MetLife employee benefit plans. *See* Teuffel Aff. ¶ 5. Because the Agreements contained a clear and unequivocal repudiation of employee benefits,[9] plaintiffs' claims for benefits accrued on the day the Agreements were signed, which was either the day plaintiffs were hired by MetLife or the day they began work for MetLife. That date is well over six years ago (and, in some instances, as many as twenty-one years ago) for all of the plaintiffs. *See* Compl. ¶¶ 4–10. Thus, plaintiffs claims for benefits under section 502(a)(1)(B) of ERISA are time-barred and accordingly dismissed.

---

9. The fact that the repudiation did not come directly from a Plan fiduciary, *see* Pl. Mem. at 6–7, is immaterial. *See Ambris,* 1998 WL 702289, at *6–7 (finding that the typical repudiation contemplated by *Miles*—"a statement, in one form or another, from a plan fiduciary that an application for benefits has been denied"—is not required where a plaintiff is on clear notice that she is not entitled to benefits). It is sufficient that plaintiffs knew at the time they signed the Agreements that the Plans *would* repudiate any and all claims they

would make for benefits. *See Kryzer,* 2001 WL 1587177, at *4. To require that the repudiation come directly from a plan fiduciary would be to require that beneficiaries file a formal claim for benefits, which was explicitly rejected by the Second Circuit. *See Carey,* 201 F.3d at 47–48 (holding that "a plaintiff's cause of action accrues upon a clear repudiation ... *regardless of whether the plaintiff formally applied for benefits.*") (emphasis added).

**B. Plaintiffs' Claims Under Section 502(c) Are Dismissed Because Plaintiffs Have No Colorable Claim for Benefits**

■ Plaintiffs seek statutory penalties pursuant to section 502(c) (1) of ERISA for defendants' alleged failure to provide requested plan documents. *See* 29 U.S.C. § 1132(c)(1) ("[a]ny administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal."); *see also* 29 U.S.C. § 1024(b)(4) (requiring plan administrators to disclose certain plan documents upon "written request of any participant or beneficiary").

As defined by ERISA,

the term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The Supreme Court has construed the term "participant" to include former employees with "a colorable claim that [they] will prevail in a suit for benefits," since such individuals "may become eligible" for benefits within the meaning of the statute. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

It is axiomatic that an individual whose claim for benefits is time-barred does not have a colorable claim for benefits. *See Szoke v. Deloitte & Touche LLP,* No. 93 Civ. 7097, 1995 WL 92258, at *1 (S.D.N.Y.

Mar. 3, 1995) (granting motion to dismiss on plaintiff's section 502(c) claim because claim for benefits was time-barred); *see also Yablon v. Stroock & Stroock & Lavan Ret. Plan & Trust,* No. 01 Civ. 452, 2002 WL 1300256, at *9 (S.D.N.Y. June 11, 2002) (dismissing plaintiff's claim under section 502(c) because she had no "colorable" claims for benefits once all of her substantive claims had been dismissed). Thus, such an individual is not entitled to statutory penalties if a plan administrator refuses to provide her with documents. *See Yablon,* 2002 WL 1300256 at *9. Because plaintiffs' claims for benefits are time-barred, their claims for discretionary penalties for MetLife's failure to provide them with plan documents are dismissed.

**C. Brennan and Francis' Claims Under New York Labor Law Are Dismissed**

The exercise of supplemental jurisdiction is discretionary. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims...."). This Court may decline to exercise such jurisdiction if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Federal courts routinely dismiss state law claims when all federal claims in a complaint are dismissed before trial. *See, e.g., Castellano v. Board of Trs. of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.1991) (dismissing pendent state law claims because federal claims had been dismissed, leaving no independent basis for federal jurisdiction); *Bilyou v. Dutchess Beer Distribs., Inc.,* No. 99 Civ. 4231, 2001 WL 286779, at *1

(S.D.N.Y. Mar. 9, 2001) (dismissing New York State Labor Law claims where all federal claims were dismissed), *aff'd*, 300 F.3d 217 (2d Cir.2002); *Tardi v. Citicorp Secs., Inc.*, No. 96 Civ. 5419, 1996 WL 724727, at *6 (S.D.N.Y. Dec. 17, 1996) (acknowledging that dismissal of state claims is appropriate when federal claims are dismissed early in the litigation). Because all of plaintiffs' federal claims are barred as a matter of law, I decline to exercise supplemental jurisdiction over Brennan and Francis' state law claims.

## III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted and the Complaint is dismissed in its entirety. The Clerk of the Court is directed to close this case.

SO ORDERED.