**Deborah YUHAS, Plaintiff,**

v.

**PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, Defendant.**

**No. 00CIV6815CMLMS.**

United States District Court, S.D. New York.

Aug. 2, 2001.

---

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Deborah Yuhas sues defendant Provident Life and Casualty Insurance Company ("Provident") for legal and equitable relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1001, *et seq.*[1] Plaintiff contends that she is entitled to long term disability ("LTD") benefits because she is physically disabled. Defendant moves for summary judgment.

For the reasons stated below, defendant's motion for summary judgment is granted.

### FACTUAL BACKGROUND

On a motion for summary judgment, the Court views the facts most favorably to the non-moving party—in this case, the plaintiff.

The facts of this case are largely undisputed.[2] Plaintiff, a graphic designer for the New York Daily News, became totally disabled due to a mental condition in December 1988. On or about June 25, 1989, plaintiff filed a claim for disability. On November 15, 1989, defendant approved plaintiff's claim for disability, and plaintiff began receiving monthly disability checks. Plaintiff was notified that she was entitled to receive disability benefits for a twenty-

---

1. Plaintiff is a member of the Guild–News Health & Welfare Fund ("Guild–News"), an employee benefit plan which provides long term disability benefits under an insurance plan issued by Provident. Plaintiff sues Provident directly, and not the Guild–News, as Provident issues the policy and makes the determinations on employee claims for long term disability benefits.

2. In fact, defendant admits that it destroyed all its records pertaining to plaintiff's case in accordance with its "record retention" procedures. Thus, in its motion for summary judgment, defendant relies entirely on the evidence submitted to this Court by plaintiff.

four month period only, because her disability was due to a "nervous, emotional, mental disease or disorder[ ]." (Roberts Aff. at Ex. A.) Plaintiff received benefits until June 1991, when the checks ceased.

On October 8, 1991, defendant advised plaintiff that the twenty-four month benefit period had expired on June 25, 1991, and that no further benefits would be paid. Defendant's letter also informed plaintiff that, under ERISA, plaintiff had the right to appeal defendant's denial of benefits. Appeals were required to reach defendant within 60 days of plaintiff's receipt of the October 8, 1991 letter denying her claim.

On December 2, 1991, plaintiff asked that her claim determination be reevaluated, and that her benefits be extended until June 25, 1992. Plaintiff's letter of appeal alleged that, in addition to her mental injuries, in the twenty-four month she was mentally disabled, plaintiff sustained debilitating physical injuries in a car accident which left her totally disabled.

In January 1992, defendant informed plaintiff that the company's ERISA Appeals Committee ("the Committee") had denied her LTD claim because she had failed to submit any documentation of total physical disability due to the accident.

During the following two years, plaintiff continued to submit evidence to defendant of her physical injuries, in the form of medical reports and bills. By letter on May 28, 1992, and again on August 5, 1992, defendant reaffirmed the Committee's denial of plaintiff's LTD claim, noting that the sixty day appeal period for plaintiff's LTD claim had expired. Defendant reiterated that because the twenty-four month limitation on benefits for emotional or mental disorders had passed, and the medical evidence submitted by plaintiff failed to include any "objective findings" to substantiate her claim of total physical disabil-

ity, plaintiff could not recover further LTD benefits.

The Guild–News then asked, on plaintiff's behalf, that the Committee again review the additional medical evidence plaintiff had submitted. On December 18, 1992, defendant wrote the Guild–News a letter, explaining that, although the sixty day appeal period had long past, the Committee had reviewed plaintiff's file as a courtesy. The Committee found again that plaintiff was not entitled to further LTD benefits. In the letter "cc'd" to plaintiff, defendant wrote:

> Although the recent medical information received from her treating physician indicates a disability due to a mental or nervous condition, it does not support that as of the end of the 24 month mental and nervous limit, June 25, 1991, that [sic] Ms. Yuhas had a physical disability. Also, her LTD file does not reflect any medical documentation of a physical disability at the end of the mental and nervous limit either. Therefore, her LTD claim was closed according to the policy provision . . .

Nearly one year later, on December 13, 1993, upon receipt of additional information from plaintiff's orthopedic physician, the Committee reviewed plaintiff's file yet again. This time, the Committee found, based on the new evidence, that plaintiff had been physically disabled at the time the LTD benefits for her mental disorder ceased. Therefore, she was entitled to a retroactive payment of benefits from October 1, 1991 through May 13, 1993.

However, plaintiff's medical records from May 13, 1993 indicated that the ankle injury she allegedly suffered in the automobile accident had improved enough for her to return to work. Therefore, plaintiff was not eligible for benefits after May 13, 1993, as her "physical condition was not

severe enough to prevent her from being employed."[3] Apparently, plaintiff's mental condition had not improved, since defendant asked that she name a "Court appointed guardian or conservator" to accept the benefits on her behalf. Defendant's lawyers believed that, according to plaintiff's file, she was not competent to handle her own affairs.[4] However, plaintiff's eligibility for LTD benefits due her mental condition had long ago expired.

According to the record before this Court, plaintiff and defendant exchanged no written communication between December 13, 1993 and October 17, 1997, although they appear to have communicated via telephone during that period.

On July 23, 1997, Dr. Marie deCorse wrote to defendant on plaintiff's behalf. Dr. deCorse informed defendant that, although plaintiff was being treated for a schizoaffective disorder, a panic disorder, and an eating disorder, plaintiff was a "cooperative and reliable patient and considered competent to handle her own funds." (Roberts Aff. at Ex. Q.) On October 17, 1997, plaintiff wrote to defendant to request the release of her October 1991 through May 1993 LTD benefits, which, though awarded in December 1993, had been withheld. Plaintiff also demanded disability benefits for the period following May 1993. She claimed that she had been "unable to work physically" since 1992.

Plaintiff submitted letters from her treating physicians, and stated that she considered the appeal of her LTD claim "active and viable."

On November 11, 1997, defendant released plaintiff's LTD benefits for the October 1991 through May 1993 period, citing Dr. deCorse's letter regarding plaintiff's competency. Although plaintiff's ERISA appeal period had expired long before, the Committee had reviewed plaintiff's file again, as a courtesy. Defendant reaffirmed that plaintiff was not eligible for benefits after May 1993, and indicated that plaintiff's final check was enclosed with the letter. Moreover, defendant stated that "[n]o further examination of [plaintiff's] claim will be made." Plaintiff filed suit on September 6, 2000, seeking to overturn the Committee's determination. Plaintiff requests a declaratory judgment to determine the rights and obligations of the parties with respect to the LTD insurance policy issued by defendant. Plaintiff also seeks disability benefits from May 1993 until the present, under a breach of contract theory. She claims that she is entitled to receive benefits, as long as she remains totally disabled, until the age of 65. Defendant moves for summary judgment.

Because plaintiff's claim is barred by the statute of limitations, defendant's motion for summary judgment is granted.

---

**3.** According to the terms of plaintiff's insurance, a person is considered totally disabled if she is "not able to do each of the material duties of [her] job during the first three years that benefits are paid and [she does] not work at any other occupation." However, after three years of receiving benefits, the definition changes. A person is considered totally disabled after three years if she is: "not able to do each of the material duties of *any* job for gain or profit for which [she] is reasonably fitted by education, training or experience." (emphasis added). Pursuant to the latter defi-nition of "total disability," plaintiff was not "totally disabled" after May 13, 1993.

**4.** Defendant's December 13, 1993 letter was addressed to Ms. Denise Berletic, plaintiff's sister. Plaintiff had authorized Ms. Berletic to "request and receive and discuss any and all information regarding my medical situation" in a June 20, 1993 letter. However, this letter did not authorize Ms. Berletic to accept plaintiff's LTD benefits on her behalf.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505.

Plaintiff seeks legal and equitable relief under § 1001, *et seq.* of the Employee Retirement Income Security Act of 1974 ("ERISA"). While few facts are disputed by the parties, they disagree about when the plaintiff's cause of action began to accrue for statute of limitations purposes. Defendant contends that plaintiff's ERISA action is barred because the period of limitations had run before plaintiff commenced suit. Thus, defendant's motion for summary judgment hangs on one critical issue: whether plaintiff's cause of action began to accrue on November 11, 1997, as alleged by plaintiff, or on December 13, 1993, as alleged by defendant.

### 1. Applicable Statute of Limitations

■ While claims brought pursuant to ERISA have no prescribed statute of limitations period, the Second Circuit generally applies the period used in analogous actions, which in New York is the six-year statute of limitations for contract actions. *See Miles v. New York State Teamsters Conf. Pension & Ret. Fund Empl. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983). However, when a written agreement between the parties, such as an insurance policy, stipulates a shorter limitations period, the shorter period governs. *See Mitchell v. Shearson Lehman Bros., Inc.*, 1997 WL 277381, at *2, 1997 U.S. Dist. LEXIS 7323, at *6 (S.D.N.Y. May 23, 1997).

■ In the instant case, both parties recognize that the LTD policy specifies a three-year statute of limitations for filing LTD benefit claims. Under a section entitled "Legal Actions," the policy states that "[n]o action can be brought after three years from the date such written proof [of disability] is required." (Roberts Aff. at Ex. A.) Thus, the three-year statute of limitations, rather than the six-year limitations period, controls plaintiff's cause of action.

### 2. Accrual of Statute of Limitations

■ The statute of limitations for ERISA actions begins to run "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir.1999). While Courts differ in their interpretation of this standard, it is generally accepted that a plaintiff's cause of action accrues when plaintiff is unequivocally notified that his or her claim for benefits has been

denied. *See Miele v. Pension Plan of New York State Teamsters Conf. Pension & Ret. Fund*, 72 F.Supp.2d 88, 98 n. 7 (E.D.N.Y.1999) (noting the disagreement within the Second Circuit as to whether a cause of action first accrues when benefits are first denied, or when the appeals process is completed); *Lewis v. John Hancock Mut. Life Ins. Co.*, 6 F.Supp.2d 244, 247 (S.D.N.Y.1998) (plaintiff's cause of action commenced when he was notified that he was no longer entitled to disability benefits, but that he had the right to appeal defendant's determination); *Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.*, 21 F.Supp.2d 284, 294 n. 4 (S.D.N.Y.1998) ("In general, benefits brought under ERISA do not accrue until the internal appeals process provided for by the plan has been completed.").

■ Plaintiff claims that her cause of action did not accrue until November 11, 1997. Defendant argues that the latest date that the statute of limitations began running was on December 13, 1993. Defendant is correct.

Plaintiff's claim for LTD benefits was clearly repudiated on or before December 13, 1993. On January 10, 1992, in response to plaintiff's appeal of the termination of her LTD benefits, defendant informed plaintiff that "[the ERISA Appeals Committee] has reaffirmed the denial of your LTD claim." (Roberts Aff. at Ex. I.) On August 5, 1992, defendant wrote that "no further consideration [of plaintiff's claim] will be extended in accordance with ERISA regulations." (*Id.* at Ex. K.) When plaintiff continued to submit new evidence to support her LTD claim, defendant reviewed plaintiff's submissions "as a courtesy" but continued to reaffirm the denial of plaintiff's LTD benefits. I find that these communications to plaintiff clearly and un-equivocally denied her claim for further LTD benefits.

This Court has previously held that language similar to that used by defendant in the instant action is sufficient to start the accrual of plaintiff's cause of action. In *Mitchell v. Shearson Lehman Bros.*, 1997 WL 277381, at *1, 1997 U.S. Dist. LEXIS 7323, at *5 (S.D.N.Y.1997), the Court determined that the plaintiff's cause of action first accrued only after the plaintiff's appeal for benefits was denied. In its letter to the plaintiff, the defendant stated, "we find that the decision to deny your disability claim was appropriate." *Id.* The Court held that the plaintiff's cause of action accrued upon receipt of this letter denying her appeal. In the instant action, defendant denied plaintiff's appeal for LTD using language similar to that used in *Mitchell*, which clearly indicated its repudiation. Thus, it would appear that plaintiff's claim accrued, at the latest, on January 10, 1992.

However, plaintiff arguably kept the process alive by continuing to submit additional medical information to defendant, because defendant—which could have elected to ignore these submissions—instead decided to reexamine her claim sometime in 1993 (whether "as a courtesy" or not is irrelevant). Ultimately, the claim was allowed for the October 1, 1991 through May 13, 1993 period. Nonetheless, plaintiff was notified, in the letter dated December 13, 1993, that defendant deemed her physically able to work as of May 13, 1993, and that it was not paying her benefits beyond that date. The letter is unequivocal: "[Plaintiff] *does not qualify for benefits* beyond [May 13, 1993], as her physical condition is not severe enough to prevent her from being employed." (Roberts Aff. at Ex. P.) (emphasis added). Viewing the evidence in the light most favorable to plaintiff, she had three years

from December 13, 1993 to commence her lawsuit. Her failure to do so bars her claim.

■ Plaintiff's arguments to the contrary are unpersuasive. Plaintiff first argues that the appeal period "lay dormant" and plaintiff's cause of action did not begin to accrue until 1997, because defendant's December 1993 letter failed to advise her of her right to appeal her award of retroactive benefits. (Pl. Mem. in Op. at 3.) However, defendant had notified plaintiff of her right to appeal in its denial of LTD benefits in October 1991, thus satisfying the ERISA requirement that plaintiff be notified of her right to do so. Plaintiff's LTD plan specifies: "If an employee's claim for benefits under the plan is denied, the employee will receive a written explanation giving detailed reasons for the denial … as well as an explanation of the claim appeal procedure." (Roberts Aff. at Ex. A.) Because plaintiff's claim for benefits had been repudiated prior to December 1993, defendant was not required to include information about the appeal process in this letter, as defendant had already satisfied the plan provision by notifying the plaintiff of the appeal process in its October 1991 letter to plaintiff. In addition, plaintiff cannot claim ignorance of her right to appeal, as she had actively appealed the denial of her claim on several occasions prior to December 1993.

■ Plaintiff then alleges that her claim "came back to life," and the statute of limitations began to run, when written correspondence between the parties resumed in late 1997.(*Id.*) Plaintiff argues that her cause of action first accrued on November 11, 1997, when defendant wrote to plaintiff that "[t]he ERISA appeal period has expired," and "[n]o further examination of [plaintiff's] claim will be made." While plaintiff correctly concluded that defendant's language in the November 1997 letter constituted a "clear repudiation" of plaintiff's claim for benefits, plaintiff ignores the fact that defendant used similar language in several letters to plaintiff prior to November 1997, effectively repudiating plaintiff's claim for additional LTD benefits on or before December 1993.

Plaintiff seems to imply that, because defendant granted plaintiff a retroactive award of benefits from October 1991 through May 1993, defendant's repudiations of plaintiff's claims prior to December 13, 1993 were ineffective. However, even if the December 13, 1993 award of retroactive LTD to plaintiff started the statute of limitations running anew, defendant clearly repudiated plaintiff's claim to further benefits on that date. Plaintiff's cause of action accrued, at the very latest, when she received the December 1993 letter. The statute of limitations expired—at the very latest—on or about December 13, 1996, but plaintiff did not file her action until September 6, 2000. Thus, plaintiff's claims are time barred.

Defendant's motion for summary judgment is granted.

This constitutes the decision and order of this Court.